## GRIFFIN *v.* GRIFFIN.

In Banc. Nov. 14, 1949.

No. 37213   (42 So. (2d) 720)

**F. D. Hewitt,** for appellant.

**Cassidy, McLain & Alford,** for appellee.

Roberds, J.

Mrs. Griffin, in her bill in this cause, prays for a divorce from appellant on the grounds of desertion and cruel and inhuman treatment; for alimony, and, as security for payment of the alimony, that a lien be impressed upon the undivided one-half interest of appellant in a described tract of land, consisting of 236 acres, located in Amite County, Mississippi. She asserts she is the owner of the other one-half interest in said lands. The chancellor granted the prayer of the bill, fixing the alimony payments at $30.00 per month. From that decree, Mr. Griffin appeals.

He says, in the first place, that the proof establishes no ground for divorce; that, at most, it shows only non-support of the wife and family by the husband, and that non-support is not a ground for divorce in Mississippi. The evidence justifies the finding of this state of facts:

The parties hereto were married in November, 1919. Griffin was a college graduate and a school teacher. The parties thereafter resided in different places, as Griffin followed his profession as a teacher, until the year 1928 or 1929, when they located at Liberty, Mississippi. Later they moved onto the above tract of land, situated some four miles from Liberty. They then had five children, three girls and two boys, all minors. About the time, or shortly after, they moved onto this farm Griffin appears to have had a complete collapse as to effort, energy and ambition. He would do no work. He permitted the farm to become dilapidated. Practically none of it was in cultivation. The house was falling in; the roof leaked so badly that the occupants had to constantly move from place to place therein as the rains came; it was dangerous to live in the house. The family did not know from whence the next meal would come. They partly lived off the neighbors. Mrs. Griffin obtained the use of a mule from a neighbor and undertook herself to cultivate a garden and produce food for the family.

The members of the family implored Griffin, without success, to apply himself to the business of helping support them. Finally he sold the last work animal and the last hog. Nothing remained except a dilapidated house, in which it was dangerous to live, located upon a dilapidated, unworked farm. Griffin had no credit. That was the situation in 1942. The two boys were then in the army. One daughter appears to have married. Another, Marguerite, was working her way through the University of Alabama at Tuscaloosa. Frances, a third daughter, was mentally defective. Under these conditions the wife left home and, taking Frances with her, went to Tuscaloosa, where, for a time, she operated a boarding house. Marguerite married and moved to Bessemer, Alabama. The mother and Frances then moved to Bessemer, and at the time of the trial were, and for some time had been, living in the home with Marguerite. Since moving to Bessemer Mrs. Griffin has been working, making $21.00 per week, supporting herself and Frances. She was 51 and Griffin 66 years of age at the time of the trial. She had remained away from the old home since 1942 to the time of the trial in January, 1948. In the meantime Griffin had sold some $6300.00 in timber from the farm. Out of this he sent his wife $25.00 and to Frances $125.00, of which latter sum $100.00 was for dental work. He says that from the proceeds of the timber sale he paid a brother $2000.00 as a result of litigation instituted by the brother against him. That would leave some $4300.00 out of which he has contributed approximately $150.00 to support his wife and semi-helpless daughter. Do these circumstances entitle the wife to a divorce in Mississippi? Non-support is not expressly made ground for divorce in this State. Section 2735, Mississippi Code 1942, Annotated. If appellee is entitled to a divorce it is on the theory of constructive desertion by the husband. We have not been referred to, nor ourselves found, a case in which this court has recognized and applied this doctrine. How-

ever, the doctrine is well-established as a part of the jurisprudence of this country. The rule is set out in 17 Am. Jur. pg. 201, Sec. 101, in these words: "Usually the spouse who withdraws from cohabitation or absents himself from the other spouse is the one chargeable with desertion. However, this is not necessarily true. Either spouse may by reason of misconduct or cruelty drive the other away, in which case the former, and not the latter, is the deserter or is guilty of desertion. In other words, the conduct of one of the parties may justify separation from him or her by the other and confer the right upon the latter to obtain a divorce upon the ground of wilful desertion. Thus if a husband by his extreme cruelty to his wife compels her, for her own safety and protection, to seek a home elsewhere than under his roof she does not thereby desert him, within the meaning of the statute, but on the other hand, under such circumstances, he is chargeable with the offense of deserting his wife, and she may obtain a divorce on that ground." . . .

"To constitute constructive desertion, it is not necessary to show that the defending spouse misconducted himself or herself with the intent of forcing the other to leave the home; nor is it necessary that there should have existed in connection with the acts of cruelty any settled purpose to drive away the other. It is enough if such is the natural consequence of the acts. The complaining spouse must, of course, be justified in leaving the defending spouse, in order to constitute such desertion by the latter."

Judge Amis in his book "Divorce and Separation in Mississippi", Sec. 91, pg. 135, defines constructive desertion in this language: "Constructive desertion. What constitutes.—As heretofore shown there cannot be a desertion so long as the parties live together as husband and wife. There must be a complete separation or abandonment of the marital relationship by one or the other. Supra, Section 82. This is usually caused by one or the

other leaving or deserting the matrimonial domicile, which if done without just cause amounts to desertion on his or her part. But if either party by reason of such conduct on the part of the other, as would reasonably render the continuance of the marital relation, unendurable or dangerous to life, health or safety, is compelled to leave the home and seek safety, peace and protection elsewhere; or ██ if the husband negligently or wilfully fails or refuses to support the wife, reasonably, in accordance with his means and ability,  .  .  . the the innocent one will, ordinarily, be justified in sever-. ing the marital relation and leaving the domicile of the other so long as such conditions shall continue. And in such event the one so leaving will not be guilty of desertion but the one whose conduct caused the separation will be guilty of constructive desertion.''

The principle is discussed and applied in the case of Cooper v. Cooper, 176 Md. 695, 4 A (2d) 714.

We accept the principle but hold it will not be applied except in extreme cases. ██ We think this is such a case. Here it is evident that appellant, like one of Washington Irving's characters, was constitutionally opposed to all kinds of profitable labor. He was indigent and improvident without cause. The family did not have sufficient food and nourishment; practically no shelter; largely lived off their neighbors; evidently they were humiliated; all pride was fast departing from them; health was impaired. The question naturally presents itself, what could the wife do under such circumstances? It seems to us she has made an heroic effort. It would be contrary to all humane instincts and common sense to say she, and not the husband, is the one who is guilty of desertion under these conditions.

The chancellor decreed that the husband and wife each owned a one-half undivided interest in the 236 acres of land. Appellant says the proof does not justify the finding that the wife had title to any interest in the land. It will be noted appellant does not challenge the power

or propriety of the chancellor to adjudicate this question in this proceeding. No contention is made that the bill was multifarious. Indeed, the bill charged that each owned a one-half undivided interest and the answer denied the wife had title to any interest in the land. Defendant, by his answer, presented the issue to the court. Even on this appeal the power or propriety of the chancellor to adjudicate ownership of the land, as between the parties hereto, is not challenged. The contention alone is made that the evidence is insufficient to support the finding. We deal with the case as made and the contention urged.

Mrs. Griffin testified she owned a one-half undivided interest. No objection was made to that oral proof. Griffin never specifically denied in his testimony that Mrs. Griffin held title to a one-half interest. Indeed, by one answer he seems to impliedly admit she did own an interest therein. He was asked "as a matter of fact you want the whole place?" He replied, "I think it should be in my name, all of it", which is to say, by implication, he was not then vested with the entire title, but he wanted to be so vested. When Griffin sold the timber, the purchasers required that Mrs. Griffin sign the deeds. There is no explanation why this was demanded—whether it was because she had title or as a precaution against homestead claim by the wife. However, she was not then residing upon the land, and was living separate and apart from the husband, and the tract exceeded by 76 acres the total acreage allowed as a homestead. The only written evidence of title in the record is an instrument of the nature both of a quitclaim deed and a release of a vendor's lien. The granting part is of the nature of a quitclaim deed. It recites "For and in consideration of the sum of Ten and No/100 ($10.00) Dollars, and other valuable considerations, the receipt of which is hereby acknowledged, I hereby convey and quitclaim unto C. M. Griffin and Mrs. Marguerite Griffin, all claim, title, lien, and interest that I have in and to . . ." the

land in question, describing it. Then the instrument recites ''By this quitclaim deed I release any and all liens decreed in my favor and to me upon said land . . .'' by a certain styled and numbered chancery court proceeding, naming as defendants to that proceeding both Mr. and Mrs. Griffin, and then reciting ''and being a decree for the enforcement of vendor's lien upon said land and for cost therein''. It also released any claim of A. M. Griffin resulting from a tax purchase by him of the land, giving date of sale, etc. Three conclusions can be drawn from this instrument: First, the conveying part is to both Mr. and Mrs. Griffin; second, as to the release of vendor's lien part, since the release is to both Mr. and Mrs. Griffin, presumably the lien was against her property as well as that of Griffin, and, third, the instrument conveyed to both of them such title as grantor had acquired at a tax purchase of the land. The instrument is dated December 29, 1943, and it recites a tax sale and purchase by A. M. Griffin on April 7, 1941, and also the payment of the taxes by A. M. Griffin for the year 1942. There is nothing to show the tax sale to A. M. Griffin was not valid, nor who owned title prior to the execution by him of the foregoing quitclaim and release. That instrument is all the written evidence of title the chancellor had before him and all we have before us. If appellant alone had prior title, and if the tax sale to A. M. Griffin was void, appellant should have shown that, because the oral proof and the foregoing quitclaim and release established prima facie title in Mr. and Mrs. Griffin. We might add that the imposition upon appellant of the obligation to pay appellee thirty dollars per month was based upon his ownership of one-half of the land. Had it been shown he owned all of it and Mrs. Griffin owned no interest therein, the allowance to the wife, most likely, would have been greater than that sum. Whether the title to the land can be tried over again we do not decide. Responding to the only contention

508

here made as to that question,—i. e., whether the proof sustains the chancellor's finding,—we hold that it does. Indeed, we do not see how he could have found otherwise.
Affirmed.