WINDHAM *v.* WINDHAM.

October 26, 1953

No. 38855 40 Adv. S. 75 67 So. 2d 467

548

*E. L. Dent, John K. Keys,* Collins, for appellant.

*Wingo & Finch,* Hattiesburg, for appellee.

ROBERDS, P. J.

Mrs. Windham, the appellee, filed this bill praying for (1) divorce from appellant, (2) custody of their two minor children, (3) alimony for herself and (4) support for the two children, (5) a half interest in the real and personal property of appellant, and solicitor's fees.

Appellant, by answer, took issue on all of the asserted claims, and, by cross bill, asked that he be granted a divorce from appellee.

The chancellor granted a divorce to the wife and awarded her the custody of the two minor children; decreed her the use of the homestead as long as she should remain unmarried and purported to divest out of the husband and invest in the wife a half interest in 120 acres

of land, legal title to which was in the husband, and to divest out of the wife and invest in the husband a half interest in 37 acres of land, title to which was in the wife. He awarded no alimony to the wife nor support to the minor children and did not allow the wife a fee for her solicitor. From this decree the husband appeals.

He complains only of that part of the decree undertaking to divest out of him and invest in the wife a half interest in his lands. He says, first, the testimony is too vague and indefinite as to the services rendered by the wife in respect to the land to afford any foundation for determining the value of such services, and, second, that a court of equity has no power, simply by decree or fiat, to lift out of one person his title to real property and invest that title in another.

As bearing upon the first question, it is shown that when the parties hereto married in 1928 appellant then owned two tracts of land, constituting approximately 120 acres, on one of which tracts was located a house which was used by them as a residence after their marriage. This house was repaired and enlarged after the marriage. Subsequent to the marriage appellant acquired and conveyed to appellee a tract of 37 acres of land. The decree undertook to divest out of appellant a half interest in the 120 acres and invest that half interest in appellee. Likewise it purported to divest out of the appellee a half interest in the 37 acres and invest that half interest in appellant. Appellant also acquired, after the marriage, a leasehold upon 80 acres of sixteenth section school lands, this lease to expire about five years after the trial of the case. He also owned certain farming tools, cattle and other personal property used about the operation of a farm. The chancellor did not disturb title to the leasehold nor to the personal property, and, there being no cross appeal by Mrs. Windham, the correctness of his action, or non-action, in that respect is not before us.

Mrs. Windham detailed her services, as a basis of her claim for an interest in the 120 acres of land, in these words:

"Q. At the time that you married your husband in 1928, what, at that time, did you own by way of real property?

"A. I didn't own any.

"Q. What did he own at that time?

"A. He had a deed to both places of his but neither of the places wasn't paid for.

"Q. By both places—what are you speaking of?

"A. The eighty acres south of the Lone Star Highway and—

"Q. Eighty acres?

"A. Yes, sir.

"Q. And what was the other place?

"A. The forty acres where our home is now. That is the land he owned.

"Q. Was the home on the land when you married him?

"A. No, sir.

"Q. There was no house there?

"A. It was a three-room tenant house without any ceiling in it.

"Q. Was it remodeled into your home?

"A. Yes, sir; after we married.

"Q. Is that all he owned?

"A. Yes, sir.

"Q. How much, if you know, was owed on that when you married?

"A. This place where we are living—the home place —it was approximately $1,200.00 in the Federal Land Bank against this place that he had borrowed from them to pay for the place. He owed—well, he had paid $266.00 on the eighty-acre place prior to our marriage. After we married, there were some heirs connected with this land and he was to pay them later for their share of the land. That was after we married. We came to Collins and got

Mr. Dent to fix the papers and borrowed the money from the Federal Land Bank.

"Q. How much did you borrow on the eighty-acre place?

"A. About $500.00. The place was worth, I think, around $900.00 and he had paid $266.00.

"Q. And you borrowed the balance?

"A. Yes, sir.

"Q. When was that paid back—that and the other $1,200.00?

"A. It was paid by the year to the Federal Land Bank.

"Q. Where did the money come from that you used to pay it back?

"A. Off our farm.

"Q. At the time you married, was this land in cultivation?

"A. Part of it was. After we married, he and I and another fellow cleared the land that wasn't cleared.

"Q. Do you mean that you actually worked in the field?

"A. I did. I helped clear the land and I dug ditches.

"Q. You dug ditches?

"A. I positively did. I certainly did.

"Q. After that did you accumulate any more land?

"A. Ten acres.

"Q. Where did that come from?

"A. He bought that from Mr. Mounger.

"Q. From Mr. Mounger?

"A. Yes, sir.

"Q. Did you help pay for it?

"A. Yes, sir.

"Q. I believe it is alleged that he has an interest in eighty acres of sixteenth section land?

"A. That is right.

"Q. Was that acquired after you married?

"A. Yes, sir.

"Q. What is that eighty acres of land used for, Mrs. Windham?

"A. Farming. He rents that on a half basis.

"Q. He rents it on halves?

"A. Yes, sir.

"Q. Have you got any of the proceeds from that eighty acres?

"A. Positively no.

"Q. What is the rental?

"A. I don't know.

"Q. Do you know how much he made off it last year?

"A. Yes, sir.

"Q. What?

"A. He made ten bales of cotton.

"Q. Did you get your portion of that?

"A. No, sir.

"Q. Was there a crop made on the other lands, Mrs. Windham, last year and the year before?

"A. The whole place. He cultivated the whole place, but the eighty acres was in his son's charge.

"Q. Was it cultivated?

"A. Yes, sir.

"Q. The forty that your home is on—did you receive any portion of that crop?

"A. Positively no.

"Q. What crop was made on that?

"A. Cotton and corn.

"Q. And you got none of it?

"A. No, sir.

"Q. You own forty acres, I believe, do you?

"A. Yes, sir."

She also said the husband had a small store and she worked part-time at that store.

■ ■ These general activities over a period of twenty-eight years afford no clear basis for determining, with certainty and accuracy, their money value, assuming, but not adjudicating, a wife may create an indebtedness

against the husband by such activities under the stated circumstances. She does not claim there was any understanding or agreements she would be paid, and we do not decide whether such an agreement, if had, would have been void under Section 454, Miss. Code 1942, restricting contracts between husband and wife.

Nor could the wife, under the circumstances here, become the beneficiary of a resulting trust, in the lands of the husband, as contended by Mrs. Windham. Mr. Windham owned the lands at the time of the marriage. The wife does not claim she paid any of the purchase price, or that she did any act or performed any services before, at or about the time of the purchase of, or acquisition of the title to the lands, creating for her benefit a resulting trust therein. ''A resulting trust arises, if at all, in the same transaction in which the legal title passes, at the time that legal title passes, on consideration advanced before or at that time, and not from matters thereafter occurring or on consideration thereafter advanced unless occurring or advanced immediately thereafter so as to be in fact a part of the same transaction. The fundamental reason for the rule is that the resulting trust is one implied by law from the circumstances of consideration at the time of the transaction,'' although the trust is not affected by the failure of the person purchasing the land to obtain a valid deed or title thereto at the date of the transaction, but the trust attaches when the title is obtained subsequently. 54 Am. Jur., pg. 159, Sec. 204; Moore v. Moore, 74 Miss. 59, 19 So. 953; Bush v. Bush, 134 Miss. 523, 99 So. 151. In the Moore case Judge Whitfield, speaking for the Court, quoted from the old case of Rogers v. Murray, 3 Paige's Chy., p. 397, where it is said: ''After the legal title has once passed to the grantee by the deed, it is impossible to raise a resulting trust so as to divest the legal estate, by the subsequent application of the funds of a third person to the improvement of the property or to satisfy the unpaid purchase money.''

To avoid confusion the case points out that in executory contracts of purchase the title does not pass until the deed is executed. ■■■ Since appellant had title to the lands before the parties hereto married and the contributions in labor by Mrs. Windham to making improvements and repaying borrowed money on the lands were made thereafter no resulting trust arose in her favor in the lands.

On the second question, the decree undertakes to adjudicate that "* * * Mrs. Annie Windham is entitled to 50% of the property (the land) now held in both her name and that of her husband, Ben W. Windham," and "she is hereby vested with a 50% interest * * *" to the lands of her husband (except the leasehold) and that to which she has title. Appellant says the chancery court has no power to divest and invest title in that manner; that there must be some vehicle for such transmission of title—such for instance, as appointment of a commissioner and sale by him in proper cases, or execution of a deed by the owner pursuant to direction of the court, under Section 1376, Code 1942, etc. There is some confusion in the late cases from this Court as to the power of chancery, merely by judicial fiat, to lift title out of one and vest it in another, but upon analysis of the cases it will be found that no such power has been recognized where it has been properly challenged.

In Harris v. Worsham, 164 Miss. 74, 142 So. 851, the Court ordered the husband to convey to the wife certain real property in payment of alimony. The power of the court to do that was not challenged.

In Hemphill v. Hemphill, 197 Miss. 783, 20 So. 2d 79, the Court confirmed title to the homestead in the wife. The husband had already executed a quitclaim deed to the wife to the homestead. The decree also adjudicated that each the husband and wife was the owner of certain personal property. The wife testified that she "made payments (thereon) from time to time," but the court said that " in so far as the decree requires a sale of the

automobile, to satisfy a lien for 'money she has paid thereon' it is irregular and unauthorized, especially since it directs the proceeds of such sale arbitrarily .to be equally divided. A sale would not under such circumstances constitute the enforcement of a lien for a definite and redeemable liability, but a mere partition of personalty, the title to which is not shown to be joint.'' · The quoted statement is especially applicable to the nature of the claim and character of contribution Mrs. Windham asserts in this cause.

Todd v. Todd, 197 Miss. 890, 20 So. 2d 827, recognized the power of chancery to impress a lien upon the realty of the husband to secure payment of alimony to wife and support of his children, but not to impound part of the purchase price of the land for unmatured installments of alimony.

In Griffin v. Griffin, 207 Miss. 500, 42 So. 2d 720, the Court construed a written instrument to vest in the wife of a one-half interest in certain lands. No question was raised as to the power of chancery to do that.

In McCraney v. McCraney, 208 Miss. 105, 43 So. 2d 872, the decree granted the wife alimony and then provided she ''shall have by way of alimony the fee simple title to the property described in the original bill—and that this decree shall operate as a conveyance to her of a fee simple title to the said property.'' This Court, as to the power of chancery, to do that, said ''Without regard to whether or not the proof was sufficient to sustain either of the grounds for divorce stated, we know of no authority for a court to divest the husband of the title to his property and to invest the title in the wife by judicial fiat or decree. In a proper case the court could have awarded alimony payable in a lump sum or in monthly installments, depending upon the circumstances of the parties, and could have fixed a lien for the payment thereof against the property of the husband with the right on his part to discharge such lien and retain his property,

or the court could have ordered the property sold under execution after default in the payment of the alimony under a decree fixing the same in some definite amount in a lump sum or in monthly installments."

In Chrismond v. Chrismond, 211 Miss. 746, 52 So. 2d 624, the decree adjudicated the parties had never been lawfully married; that certain property was accumulated by their joint efforts while living together, and that Mrs. Chrismond was entitled to the residence the parties had been occupying as a home and, to effectuate transmission of title, ordered Chrismond to execute a deed thereto to Mrs. Chrismond within thirty days. The Supreme Court, referring to the power of equity to divest and invest title by decree, said: "This Court has also held that where alimony is awarded to the wife and is made payable in a lump sum, it must be paid in money, and that the court cannot award a part of the husband's property to the wife in payment of alimony," citing McCraney v. McCraney, supra.

Wilson v. Wilson, 215 Miss. 273, 60 So. 2d 652, came before this Court on the pleadings and the decree. This Court did not have before it any testimony taken in the lower court. This Court said: "The record, therefore, does not disclose the nature and extent of the contribution made by appellee to the accumulation of the property, whether in money, labor, or other thing of value, nor the circumstances of the transaction." The opinion pointed out that the bill did not seek to divest title out of defendant "but sought an adjudication of title in appellee, and the decree so adjudicated," under the doctrine of resulting trust. This Court observed "—nor did he (the husband) challenge the power or propriety of the court to adjudicate appellee's interest in the property in this proceeding."

In Gates v. Gates, 215 Miss. 298, 60 So. 2d 778, the wife, in her bill, sought a divorce, custody of children, alimony for herself and support for the children, and that

the court impress a lien upon property of the husband to secure payment of the money decree. It was said in that case, "The decree under review awarded alimony in monthly installments and fixed a lien upon the property of the husband to secure the payment of the same as was held proper in the case of McCraney v. McCraney, supra."

It is thus seen that neither of the cases is authority for holding that the chancery court has power simply by decree, or judicial fiat, to divest title to real property out of one person and invest it in another. Transmission of such title must be by some recognized method, as above stated, such as sale by a commissioner, or execution of deed by the one holding such title, etc.

 The attempt of the decree in this case, in and of itself, to divest out of the husband and wife and invest in the other a one-half interest and title to their respective real properties was ineffectual as a transmission of title.

 However, it seems most likely that the failure of the chancellor to award support for the children and alimony for the wife and, perhaps, counsel fees for her, was because it was thought the decree divested out of the husband and invested in the wife title to one-half of the 120 acres of land, and that the learned chancellor also thought the husband had been vested with title to one-half interest in the thirty-seven acres of land, title to which was in the wife. For these reasons the cause should be reversed and remanded for a new trial.

 Motion is made here for allowance of counsel fees for appellee in this Court. We have adopted the rule in cases of this character of allowing the wife for counsel fees in this Court fifty percent of the amount allowed her for such fees in the lower court. The trial court did not allow her anything for fees for her solicitor in that court;

560

therefore, we do not allow anything for that purpose in this Court.

Reversed and remanded.

*Kyle, Arrington, Ethridge,* and *Lotterhos, JJ.,* concur.