BRABHAM *v.* BRABHAM

No. 39814 December 19, 1955 84 So. 2d 147

*Emmett P. Allen,* Brookhaven, for appellant.

*Breed O. Mounger,* Tylertown; *Reeves, Brumfield & Reeves,* McComb, for appellee.

GILLESPIE, J.

Appellant was the defendant below, the husband of appellee. We refer herein to the appellant as the husband, and appellee as the wife.

The wife sued her husband for divorce on grounds of habitual drunkeness, habitual use of drugs, and habitually cruel and inhuman treatment. The bill charged that when the parties married neither had any property; that they have acquired certain property by the joint efforts of the parties; that the wife contributed funds earned from teaching to a common pool; that the wife carried on the business, which was in the husband's name while the husband was confined for treatment for alcoholism and the drug habit, and managed the business at such times; that the wife had lent her credit in acquiring, maintaining and accumulating said property; that by operation of law a resulting trust was raised in favor of the wife, and the prayer was that the court adjudge the wife to be owner of an undivided one-half interest in the property, and for its sale by a commissioner for division of the proceeds. The chancellor granted the wife a divorce and custody of their thirteen year old daughter; adjudged the wife to be an owner of an undivided interest in the property; gave judgment against the husband for $150 per month alimony and child support; adjudged the wife entitled to retain half of $5,000

withdrawn from a joint bank account, and awarded the wife the free use of the home, its furnishings, and an automobile.

The home was purchased in the name of the husband and wife and no issue arises as to its title.

We first state the facts touching the acquisition and accumulation of the property, all of which was and is in the name of the husband, for the purpose of determining whether the facts raise a resulting trust in favor of the wife.

The husband had been in the automobile business prior to their marriage in 1936, in which year he established an automobile agency business, which was later closed out and no assets remain from the operation of that business, and while much evidence was taken in regard thereto, we do not deem that evidence material on the issue here involved.

The husband secured a contract in 1946 for the distribution of Pontiac automobiles, and the Brabham Pontiac Company was begun in 1946. The wife had no money and the husband had little, if any, with which to start a business. The husband borrowed $8,000 from his brother-in-law, in consideration of which loan, he gave his brother-in-law a one-fourth interest in the business, which interest was reconveyed to the husband when the money was later repaid. The husband gave his brother-in-law checks, signed only by himself, to be held until the money was repaid as evidence of the indebtedness. With this borrowed $8,000, the husband bought three lots, taking title in his own name. With the balance of the $8,000 and other borrowed money, a building was erected on these lots for the use in the automobile business. After the business began, the husband traded an automobile for additional lots. An additional $3,000 was borrowed by the husband from his brother-in-law, and both the $8,000 loan and the $3,000 loan were repaid from the profits of the business. This is how the business started.

There was some testimony that an automobile apparently purchased some five or six years prior thereto and registered in the name of the wife was sold by the husband at or about the time of the commencement of the Brabham Pontiac Company, but it is not shown how much was realized from the sale of that automobile. That testimony is of no assistance to this Court in determining the issue of a resulting trust.

At the beginning of the business known as the Brabham Pontiac Company, including the acquisition of the real property in the husband's name, the wife did not put up any money, nor did she sign any notes, although at some later time she did sign notes with her husband.

During the operation of Brabham Pontiac Company, the husband would frequently get drunk or be under the influence of drugs, and on numerous occasions had to take treatment for these conditions, and during the absence of the husband, the wife stayed at the business, managed it, and kept it going. There was no contract for the payment of a salary to the wife. She testified that she spent the biggest part of her time working in the business from January 1948 to February 1949, at which latter date the Brabham Pontiac Company was sold by the husband; but the wife could not estimate the time spent in the business prior thereto, saying that the times worked were too numerous and frequent to estimate.

On November 13, 1946, the husband gave power of attorney to his wife to transact business in his name in connection with the Brabham Motor Company. The wife signed checks on the business bank account. From July 13, 1948, and thereafter, the wife held in her name a bank lock box, to which the husband had access, and she put money in and took money out of this lock box from time to time in connection with the operation of the business. The wife testified that she considered this business one-half hers, and based her understanding and

claim on the fact that she considered her credit was used in establishing the business; that although she did not sign notes or other obligations at the beginning of the business, she considered that she was liable. It appears that the principal ground of her claim to one-half interest in the business and property, as shown by her testimony, is based on the fact that she contributed time to make money and managed the business and kept it going when the husband was away.

The Brabham Pontiac Company was sold by the husband in February, 1949. The building and the lots were retained. The wife did not join in signing any papers in connection with this sale. After sale of the Brabham Pontiac Company, the lots and business building thereon were leased by the husband for a five-year term, at a monthly rental of $350, with the lessee paying the taxes and insurance. This lease expires in 1956. There is a lien on this property payable at the rate of $200 per month, the notes having been signed by the husband and wife.

The husband leased from Mrs. J. H. Brent certain property known as the Nettles System Building, located on Canal Street in McComb, Mississippi, for $25 per month, the lease being for a term of five years, expiring in 1956. The husband sub-let this property for $75 per month, so that it returns a net income of $50 per month until the lease expires.

The wife contends that the foregoing circumstances raise a resulting trust in her favor entitling her to be adjudged the owner of an undivided one-half interest in and to the lots and buildings above mentioned, and in the leasehold on the Nettles System Property.

"A resulting trust arises, if at all, in the same transaction in which the legal title passes, at the time that legal title passes, on consideration advanced before or at that time, and not from matters thereafter occurring or on consideration thereafter advanced unless occurring

or advanced immediately thereafter so as to be in fact a part of the same transaction. The fundamental reason for the rule is that the resulting trust is one implied by law from the circumstances of consideration at the time of the transaction, although the trust is not affected by the failure of the person purchasing the land to obtain a valid deed or title thereto at the date of the transaction, but the trust attaches when the title is obtained subsequently. 54 Am. Jur., p. 159, Sec. 204; Moore v. Moore, 74 Miss. 59, 19 So. 953; Bush v. Bush, 134 Miss. 523, 99 So. 151. In the Moore case, Judge Whitfield, speaking for the Court, quoted from the old case of Rogers v. Murray, 3 Paige's Chy., p. 397, where it is said: 'After the legal title has once passed to the grantee by the deed, it is impossible to raise a resulting trust, so as to divest the legal estate by the subsequent application of the funds of a third person to the improvement of the property, or to satisfy the unpaid purchase money.''' Windham v. Windham, 218 Miss. 547, 67 So. 2d 467.

"Cases involving questions of resulting trusts have often been before this Court. The following principles are recognized and declared by this Court: If one buys land in the name of another and pays a consideration therefor the land will be held by the grantee in trust for the benefit of him who advances the purchase money; and if there has been only a partial advance of the purchase money a trust will result pro tanto. The foundation of the trust in such cases is that the property really belongs to him whose funds have paid for it. But the facts creating the trust must exist at the time of the conveyance; for it is the money which has gone to the vendor as an inducement to the conveyance that creates the equity called a resulting trust. After the title has been conveyed, the application of the funds of another to pay the purchase money for the land creates no trust in favor of such other. The trust arises, if at all, at

the time of the conveyance. McCarroll v. Alexander, 48 Miss. 128; Miazza v. Yeager, 53 Miss. 135; Brooks v. Shelton, 54 Miss. 353; Thomas v. Thomas, 62 Miss. 531; Chiles v. Gallagher, 67 Miss. 413, 7 So. 208; Barton v. Magruder, 69 Miss. 462, 13 So. 839; Logan v. Johnson, 72 Miss. 185, 16 So. 231; Moore v. Moore, 74 Miss. 59, 19 So. 953; Shrader v. Shrader, 119 Miss. 526, 81 So. 337. Pomeroy lays down the controlling principle thus:

'In order that this affect may be produced, however, it is absolutely indispensable that the payments should be actually made by the beneficiary or that an absolute obligation to pay should be incurred by him as a part of the original transaction of purchase at or before the time of conveyance. No subsequent and entirely independent conduct, intervention, or a payment on his part would raise any resulting trust.' 3 Pomeroy's Equity Jurisprudence (3rd Edition), Section 1037.'' Bush v. Bush, 134 Miss. 523, 99 So. 151.

██ █ The evidence in the case at bar clearly shows that the wife did not advance her money for the purchase price of the property the husband acquired. The husband started the business and acquired the real estate with money borrowed from his brother-in-law. From the profits of the business, the brother-in-law was repaid, the building loan costs repaid, and the parties lived therefrom. The wife bases her claim to a resulting trust in her favor not on what she contributed to the purchase price of the property, but on what was done after the business was begun and the real property acquired. If the wife has any claim to the property involved, it is on the basis that she performed services in the operation and management of her husband's automobile business and the proof is ample that she did perform valuable services in working in the business and managing it when the defendant was hospitalized four and a half months as a result of a wreck in 1948, as

well as during times when the husband was intoxicated and taking treatment for the alcohol and drug habit.

Under the authorities cited, it is manifest that such services do not raise a resulting trust in the wife's favor.

Cases such as Griffin v. Griffin, 207 Miss. 500, 42 So. 2d 720, and Wilson v. Wilson, 215 Miss. 273, 60 So. 2d 652, are not in point. In the Griffin case, the sole contention of the husband was that evidence was insufficient, but the propriety of the court to adjudicate title on such character of proof was not challenged, and the real ground of that decision was that the deed vested title in both the husband and wife. In the Wilson case, there was no transcript of the evidence and this Court was without benefit of the proof.

To hold that complainant is entitled to one-half of the property here involved, would be tantamount to adopting to a limited extent the community property system, which is not known to the common law, and which can exist only by express legislation. The court has no rightful power to incorporate into the laws of this state features of a property system involving profound considerations of public policy.

The chancellor held that the wife withdrew $5000 from a joint bank account just before filing her bill and charged her with one-half thereof. The husband on this appeal assigns as error the lower court's action in adjudicating that she was entitled to retain one-half thereon. The record is not clear as to the source of these funds; there is no cross-appeal by the wife as to the court's action in charging her with one-half thereof, or $2500. We are unable to say from this record that the chancellor was in error in his actions in regard to the $5,000, and the decree below is affirmed as to the said $5000.

The husband assigns as error the allowance to the wife of $500 with which to pay her attorney. The

proof shows that the bill was filed April 9, 1953, and she withdrew the $5000 referred to a day or two prior thereto. She was unable to say how much she had of that amount at the time of the trial, although she was closely questioned in that regard. Since she had, at the time of filing the bill, $5000, of which $2500 was her husband's, it was error to allow the attorney's fee. Hemphill v. Hemphill, 197 Miss. 783, 20 So. 2d 79. That part of the decree below allowing said attorney's fee is reversed and judgment rendered here.

That part of the decree adjudging the wife to own an undivided one-half interest in and to lots 4, 5, 6, 7 and 8, Block B, Jones-Gillis Addition, in McComb, Pike County, Mississippi, and the unexpired leasehold in and to that certain property in the City of McComb, Mississippi, known as the Nettles System Building on Canal Street, is reversed and judgment rendered here dismissing the wife's claim to any interest in and to said property; and that part of the decree of the lower court requiring the husband to account for rentals on the above described property is also reversed and judgment rendered here for the husband.

■■ The husband contends that an award of alimony and support money for the child is excessive. In view of our decision that the wife was not entitled to one-half of the property, we review the income and living conditions of the parties in view of that holding. The husband had an income from the lease of the building formerly used in operating Brabham Pontiac Company of $350, of which $200 per month was paid to retire the loan, leaving a net income of $150 per month. He also had a net income of $50 per month on the leasehold covering the Canal Street property known as the Nettles System Building. The garage apartment, a part of the home owned by the husband and wife, rents for about $30 a month, of which one-half belongs to the husband. The proof at the trial showed that the husband was unable to work. His total income was $215 per month.

Under the decree for $150 per month for alimony and child support, he would have only $65 per month left with which to support himself, without taking into consideration how much, if any, income taxes he would have to pay, a factor that should be taken into consideration in fixing the amount of alimony and child support.

The wife, on the other hand, had the free use of the home, the furnishings therein, and the automobile, and the proof shows that she was earning $140 per month, plus her one-half of the rental on the garage apartment. We are of the opinion that the awarding of alimony and child support of $150 per month was excessive. Cupit v. Brooks, 79 So. 2d 478. The judgment for $150 per month alimony and child support is reversed and the case is remanded for rehearing and the allowance of a reasonable sum as alimony and for support of the minor child; and upon the rehearing of that issue, the wife's alimony and the award for child support should be separately determined. That part of the decree awarding the wife possession and free use of the home, its furnishings, and the automobile, is affirmed.

On remand, the lower court should award reasonable sums for alimony and support for the minor child in the light of conditions as they now prevail, including (1) the health of the husband and his earning capacity; (2) the health of the wife and her earning capacity; (3) the entire sources of income of both parties; (4) the reasonable needs of the wife; (5) the reasonable needs of the child; (6) the necessary living expenses of the husband; (7) the estimated amount of income taxes the respective parties must pay on their incomes; (8) the fact that the wife has the free use of the home, furnishings and automobile, and (9) such other facts and circumstances bearing on the subject that might be shown by the evidence. The award of alimony and child support should be made retroactive to December 1, 1953, the effective date of the original award by the court below, and the chancellor

may award appropriate sums for the past period and for the future, which may be different sums if conditions and circumstances prove to have changed.

It appears that the husband appealed without supersedeas, and doubtless that part of the decree reversed has been performed. In any event, when the proper award of alimony and child support has been made on remand, proper adjustments should be made by (1) charging the husband with alimony and child support, as may be determined by the chancellor for the period December 1, 1953 to date, (2) crediting the husband with any alimony and child support paid in excess of the amount allowed for the period, (3) crediting the husband with such part, if any, of the $500 attorney's fee he has paid, (4) charging the wife with one-half, or $2500, of the $5000 withdrawn from the joint account, and (5) charging the wife with any rentals she has collected on the husband's property. It may appear that there are other adjustments indicated by the circumstances which the chancellor may properly consider.

Affirmed in part, reversed in part, and remanded.

*Hall, Lee, Kyle and Ethridge,* JJ., Concur.