183 So.2d 921 (1966)
J.C. COX
v.
Ellen Irene COX.
No. 43840.
Supreme Court of Mississippi.
March 14, 1966.
T. Fred Wicker, Pontotoc, for appellant.
Jesse L. Yancy, Jr., Bruce, for appellee.
RODGERS, Justice.
This case came to this Court from the Chancery Court of Pontotoc County, Mississippi, where Mrs. Ellen Irene Cox, appellee, sued her husband for a divorce, custody of their children and for a division of the farm belonging to appellant, J.C. Cox. The appellant answered, denying the charges made by appellee, and denying that she had a right to a division of the home and personal property. He filed a cross bill, charging that the appellee had left her home and family and was guilty of adultery.
*922 After having heard the evidence, the chancellor denied the complainant and cross-complainant a divorce. He entered a decree granting the cross-complainant permanent care and custody of their children. The decree adjudicated Ellen Irene Cox to be the owner of a one-half interest in the land comprising the homestead, and certain personal property, including $1,800 on deposit in the bank in the name of J.C. Cox.
The appellant has appealed from the decree of the chancery court and assigns as error the action of the trial court in adjudicating appellee to be the owner of an undivided one-half interest in the real and personal property involved in this case, and in failing to find that appellee was not entitled to support because she was guilty of adultery.
The record reveals that Mr. and Mrs. Cox were very young when they married on January 26, 1947. He was twenty-two and she was fourteen years of age. They have three children: Jessie Ray Cox, aged fourteen; Rockey Lane Cox, aged eight; and Jeffery Lynn Cox, aged fourteen months. The parties had no property and very little money when they married, but appellant was able to purchase a farm from the Veterans' Farm and Home Board. He gave a purchase money mortgage on the farm, and through hard work on the part of Mr. and Mrs. Cox, they paid for the home, and accumulated furniture, livestock and $1,800 cash.
Early in this marriage, Mrs. Cox worked in the field with her husband. She operated a tractor, and did other manual labor on the farm, but as time passed she confined her work to their home. The parties had several quarrels during their marriage and Mrs. Cox had gone back to her father's home from time to time, but she would always return to her husband and children until their final separation.
There lived in that neighborhood a certain William Gates. He knew appellee when she was a school girl. Sometime after Mr. and Mrs. Cox were married, he began to stop at their home to take their milk to the market. It later developed that William Gates and Mrs. Cox had become friends. He separated from his wife and family, and was divorced.
On July 14, 1964, William Gates took Mrs. Cox to Memphis with him on a trip to get a load of lumber. Mrs. Cox has a sister in Memphis, but they did not go to her house. Mrs. Cox testified that she called her sister several times but was unable to contact her on the telephone. The testimony shows that they stayed in the truck all night; that they drove over into Arkansas. When they returned to Mississippi, Mrs. Cox had them arrested and they spent the night in jail. Mrs. Cox told her mother and father that she hated her husband and loved William Gates, and she told her husband that if she returned to his home, she would continue to see William Gates. After she was released from jail, she went to her sister's home in Memphis. She contacted William Gates, and he arranged to rent an apartment for her at Tupelo, Mississippi. He told the landlady that Mrs. Cox was his wife. Since that time William Gates has been a constant visitor in her apartment and she has been seen sitting very close to him in his truck on several occasions. She uses his automobile to go to her husband's home to visit their children. William Gates testified that the reason he did so much for Mrs. Cox was because he felt that he owed her that much, but denied he had illicit relations with her.
Jeffery Lynn Cox, the youngest child of the parties, has been staying with the mother and father of Mrs. Cox while the appellant worked at a local factory. Although the decree of the court permitted the children to visit their mother, the chancellor decided as a matter of fact that it was for the best interest of the children that they should live with their father.
*923 In the outset, we are confronted with the issue as to whether or not the chancery court erroneously adjudicated the appellee, Mrs. Cox, to be the owner of a one-half undivided interest in the homestead of the parties, and a one-half interest in the livestock and money owned by Mr. Cox.
The original bill does not seek separate maintenance, but alleges that the property held in the name of Mr. Cox was accumulated by the joint efforts of Mr. and Mrs. Cox, and for that reason she should be declared to be the owner of an undivided one-half interest in the property described in the original bill of complaint. The original bill prays for an injunction to prevent the sale of the home, and lis pendens notice, and asks that a lien be impressed on the described property for temporary alimony.
Conceding for the purpose of this discussion that Mrs. Cox worked in the field with her husband (the record shows beyond question that she is a willing worker); nevertheless, the fact that she worked with her husband on the farm would not entitle her to a one-half interest in the property accumulated and held in the name of her husband.
This statement is true, under the facts in the instant case, for two reasons: First: The mere fact that Mrs. Cox worked with her husband, as his wife, to pay off the mortgage on their homestead did not establish a resulting trust in her favor. Under the common law, the right of the husband to the services of his wife is a reciprocal marital obligation to that of the wife's right to the support from her husband.
It is pointed out in 26 Am.Jur. Husband and Wife section 9 at page 637 (1940) that:
"Consortium includes the husband's right to the services of his wife as a wife, and this involves her duties to be his helpmeet, to love and care for him in such role, to afford him her society and her person, to protect and care for him in sickness, and to labor faithfully to advance his interests. Consortium includes the performance by a wife of her household and domestic duties, in the sense of whatever is necessary in such respect according to their station in life, without compensation therefor. * * * It has been said that by entering into the marriage she impliedly agrees to perform such services without compensation. * * *"
The appellant purchased their homestead on credit. The deed was made to him, but it was necessary for his wife to sign the purchase money mortgage and the notes. There is no record that Mrs. Cox put any money into the purchase of the homestead at the time of the purchase.
Quoting from 54 Am.Jur. page 159 section 204, we have pointed out in the case of Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955) that:
"`A resulting trust arises, if at all, in the same transaction in which the legal title passes, at the time that legal title passes, on consideration advanced before or at that time, and not from matters thereafter occurring or on consideration thereafter advanced unless occurring or advanced immediately thereafter so as to be in fact a part of the transaction. The fundamental reason for the rule is that the resulting trust is one implied by law from the circumstances of consideration at the time of the transaction' * * *." 226 Miss. at 171-172, 84 So.2d at 150.
See Windham v. Windham, 218 Miss. 547, 67 So.2d 467 (1953).
Second: Although it must be conceded that there has been some confusion in the decisions of this Court as to the power of the chancery court to divest the title of property from the husband and give title to the wife by a simple division of property in a divorce suit, it is apparent that in cases where this has been done, the authority of the court to divide the property belonging to the husband was not challenged. See Brown v. Brown, 237 Miss. 53, 112 So.2d *924 556 (1959); Windham v. Windham, supra; Wilson v. Wilson, 215 Miss. 273, 60 So.2d 652 (1952); Griffin v. Griffin, 207 Miss. 500, 42 So.2d 720, 19 A.L.R.2d 1423 (1949); Harris v. Worsham, 164 Miss. 74, 143 So. 851 (1932); Annot. 19 A.L.R.2d 1423 (1951). In Brown, the wife drew a salary and the property was paid for from their joint account at the bank. In Wilson, this Court pointed out that in the absence of the transcript of the evidence on appeal in that case, we would presume that the evidence before the chancellor supported the allegation of the bill in which it was alleged that there was a resulting trust.
In the great majority of cases decided by this Court, we have repeatedly pointed out that the chancery court does not have authority to decree property belonging to the husband to be that of the wife, or to divide the property accumulated during the marriage, between husband and wife. We said in the recent case of Hinton v. Hinton, 179 So.2d 846 (Miss. 1965), that:
"To hold that complainant is entitled to one-half of the property of defendant would be tantamount to adopting to a limited extent the community property system. We have declined to engraft on the laws of this State features of that system. Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955). It would serve no purpose to relitigate this issue on remand." 179 So.2d at 848.
See also Jones v. Jones, 234 Miss. 461, 106 So.2d 134 (1958); Mahaffey v. First Nat'l Bank, 231 Miss. 798, 97 So.2d 756 (1957); Windham v. Windham, 218 Miss. 547, 67 So.2d 467 (1953); Hoffman v. Hoffman, 213 Miss. 9, 56 So.2d 58 (1952); McCraney v. McCraney, 208 Miss. 105, 43 So.2d 872 (1950); Hemphill v. Hemphill, 197 Miss. 783, 20 So.2d 79 (1944).
In Ladner v. Ladner, 233 Miss. 222, 99 So.2d 599, 102 So.2d 195 (1958), this Court held that the homestead rights of a wife could not be taken from her and the homestead sold for a division of the proceeds between the parties where the husband absented himself from the home without just cause and deserted his wife. Cf. Oberlin v. Oberlin, 201 Miss. 228, 29 So.2d 82 (1947).
There is another reason why the appellee is not entitled to be awarded an interest in the property of the appellant under the facts in this case: she is not entitled to alimony or support from her husband. The testimony shows overwhelmingly that the wife, Mrs. Cox, is separated from her husband through no fault on his part. Under the law of this State, in the absence of evidence showing that she is ill, or that there was some other legitimate compelling reason requiring her to live separate and apart from her husband  Mr. Cox is not required to pay her alimony, separate maintenance, or to support her, so long as she wrongfully refuses to return to her conjugal duties.
In the case of Coffee v. Coffee, 145 Miss. 872, 111 So. 377 (1927) this Court pointed out that:
"A wife is generally not entitled to alimony, where divorce is granted to her husband under circumstances showing that the separation was brought about by her acts and conduct. A husband is entitled to have his wife receive her support in his home while discharging the duties and obligations imposed upon her by the marriage contract; without fault on the part of the husband, she is not entitled to receive support elsewhere." 145 Miss. at 875, 111 So. at 378.
In the case of Santos v. Santos, 225 Miss. 425, 83 So.2d 636 (1955), where neither of the parties was entitled to a divorce under the testimony, this Court said: "Under the state of this record the wife was not only not entitled to a divorce but was not entitled to be supported by the payment of permanent alimony while living separate and apart from her husband." 225 Miss. at 428, 83 So.2d at 637.
We do not reach the question as to whether or not the testimony is sufficient to establish that the appellee is guilty of *925 adultery because it is not essential since we have reached the conclusion that the decree of the chancery court must be modified and reversed. We hold, therefore, that the decree of the chancery court awarding to Mrs. Ellen Irene Cox a one-half undivided interest in the real and personal property of J.C. Cox described in the decree is hereby reversed.
We affirm that part of the decree in which the court awarded the permanent care and custody of the children of the parties to appellant, J.C. Cox, and wherein it directs appellant to take the children to visit their mother. We reverse that part of the decree requiring the appellant, J.C. Cox, to pay the appellee, Mrs. Ellen Irene Cox, any money whatsoever for the support of the children during the time when they are visiting with her.
Reversed in part, affirmed in part.
ETHRIDGE, C.J., and JONES, BRADY and PATTERSON, JJ., concur.