PRATHER, Justice,
for the Court:
This appeal addresses the competency of evidence under the “Deadman’s Statute” and sufficiency of proof required to establish a resulting trust. The suit arose within the administration of the estate of Yew-ing Winon Medders, deceased, when notice of the filing of heirship determination was given to the deceased’s first wife, Mary Davis Medders and the five children of their marriage. The Chancery Court of Bolivar County held that a resulting trust arose against the proceeds of sale of forty acres of land titled to the decedent and sold by him nine months prior to death. From this decree the Y.W. Medders Estate appeals. The first wife, Mary Davis Med-ders, sought allegedly unpaid alimony due her prior to the decedent’s death, and from a denial of that claim, she cross-appeals.
The Executor of Yewing Winon Medders Estate appeals and assigns as error:
(1) The competency of testimony by Mary Davis Medders in violation of the Dead Man’s Statute;
(2) The ruling of the trial court that Mary Davis Medders was entitled to a one-half interest in the homeplace on the theory of a resulting trust arising out of the 1939 purchase of the property;
(3) The ruling of the trial court that Mary Davis Medders was entitled to a one-half interest in the homeplace on the theory of an equitable estoppel arising out of the 1946 divorce decree; and
(4) The failure of the trial court to hold that Mary Davis Medders was barred by the doctrine of laches from asserting a claim for an equitable one-half interest in the homeplace.
Mary Davis Medders, as cross-appellant, assigns as error:
(5)The ruling of the trial court that Mary Davis Medders was estopped to raise the issue of unpaid alimony by the decedent, Y.W. Medders.
I.
In 1922, Yewing Winon Medders married his first wife, Mary Davis Medders. Thereafter, on June 30, 1939, W.M. Merritt and Lottie W. Merritt conveyed to Yewing Med-ders by warranty deed 80 acres of Bolivar County farmland for $6,000.00. Simultaneously to this purchase, Yewing and Mary signed a Farm Security Administration mortgage for $6,705.00 secured by the eighty acres. The record is silent as to who signed the promissory note. Yewing and Mary made their home on the property, farmed the land and reared their five children.
In 1946 Mary was awarded a divorce from Yewing on the ground of habitual cruel and inhuman treatment. The divorce decree stated that Mary and Yewing were each the owners of an undivided one-half interest in the eighty acre homeplace. The decree provided that Yewing farm the land, but support Mary by dividing the proceeds of the farm profits from this land with Mary in such manner as the parties “may mutually agree upon.”
Two weeks after the divorce, Yewing married his second wife, Gladys. Yewing provided Mary with a house in Boyle, Mississippi. Yewing paid the utilities, repairs and insurance on this house, purchased clothing for the children and gave Mary $25.00 per month which he later raised to $40.00 per month.
Mary Medders now claims that the divorce was actually arranged by her husband and his attorney. Her understanding at the time of the divorce was that she would have a one-half interest in the eighty acre homeplace.
*687 In 1969 Yewing executed his last will and testament, devising his ex-wife Mary a life estate in the house and lot in Boyle, with the remainder to descend upon her death to Yewing’s grandson. The will left his widow Gladys a life estate in all real property, the remainder to descend upon her death to Yewing’s five children of his first marriage. All of Yewing’s personal property was bequeathed to Gladys.
On January 2, 1978, Yewing conveyed all his real property to his brother, Hugh Med-ders, and his brother's wife, Grace for approximately $200,000.00. Yewing and Gladys moved to Cleveland, and on October 19, 1978 Yewing Medders died.
Y.W. Medder’s brother, Hugh Medders, was named executor and probated the will. Following the executor’s petition for partial disbursement of assets and for a determination of heirship, Mary Medders and four of the five children filed an answer and cross-bill in which they asserted an interest under the will in the eighty acre homeplace conveyed by Yewing to his brother prior to his death. Appellees/eross-appellants further alleged that by virtue of the 1946 divorce decree Yewing was without authority to convey the eighty acres. The appel-lees sought a lien against the proceeds of the sale of the property.
The chancellor found no evidence of a confidential relationship, undue influence by Hugh Medders or mental incompetency on the part of Yewing at the time of the sale and upheld the decedent’s sale of his property. Further, the Court held Mary was estopped to seek unpaid alimony. However, the court found that Mary was entitled to an equitable one-half interest in the eighty acre homeplace on a theory of resulting trust or, in the alternative, the theory of equitable estoppel.
Mary David Medders died on May 28, 1982 subsequent to the hearing before the chancery court. The suit was revived by her executrix, Betty Ryle.
II.
The first assignment of error is the trial court’s admission of Mary Medders’ testimony. Appellant contends that the testimony was incompetent under Mississippi Code Annotated section 13-1-7 (1972), the Dead Man’s Statute, which prohibits as being incompetent testimony by a witness to establish his or her own claim against the estate of a deceased person which originated during the lifetime of the deceased.
Both parties to this controversy admit the incompetency of testimony of one seeking to establish his or her own claim against the estate of a deceased person under the “Deadman’s Statute” which in pertinent part states:
A person shall not testify as a witness to establish [her] own claim ... against the estate of a deceased person, which originated during the lifetime of such deceased person....
Miss.Code Ann. § 13-1-7 (1972). Our cases interpreting this statute and its applicability to the competency of persons affected by the statute are legend. In Re Collier, 381 So.2d 1338 (Miss.1980) and Bourn v. Bourn, 375 So.2d 421 (Miss.1979) are two of our more recent cases interpre-tating this provision.
Additionally, we have recognized that there can be a waiver of the incompetency of a witness. Birchett v. Hundermark, 145 Miss. 683, 110 So. 237 (1926) (waiver of incompetency by introducing and examining claimant as witness.) Coney v. Coney, 249 Miss. 561, 163 So.2d 692 (1964) (examination of incompetent witness operates as a waiver of incompetency of subsequently offered testimony of other witnesses as to matters testified to by the first witness.)
However, the question presented here is whether the objection voiced by the appellant’s attorney was specific enough to apprise the court of the basis of the objection.
The appellee argues that any objection to the testimony was waived by failure to object on the specific basis of the statute. The objection to the testimony occurred as follows:
*688 Q. Now, Mrs. Medders, do you recall approximately when the divorce was granted between you and Y.W. Medders?
A. In ’48.
Q. Well, I think the record would reflect. ...
A. ’47.
Q. All right, in or around 1946 I believe the final decree would show us, okay. Do you know who served as the lawyer back then?
A. Shands.
Q. Now was he your regular lawyer?
A. No, I didn’t have no lawyer.
Q. And between you and Y.W. Med-ders which one of you wanted the divorce?
A. He did.
Q. And when you went to the lawyer’s office what did you find there?
A. The papers already ready.
Q. All right.
A. The divorce papers was already ready.
Q. Had you gone up there before you went that first time?
A. No.
Q. And how many times did you even see the lawyer?
A. One time.
BY MR. WYNNE: No, your Honor, I’m going to object. I think this is all self-serving.
BY THE COURT: I don’t believe that’s any valid objection to it. I would overruled the objection.
Following the objection, Mary testified at length about the circumstances surrounding the divorce and the limited support she received afterwards.
Appellee relies upon Fant v. Fant, 173 Miss. 472, 162 So. 159 (1935), contending that Yewing’s estate waived any objection to the competency of Mary Medders by failing to waive answer under oath. In Fant, however, the waiver was applied only to allow admission of the sworn answer as evidence. 162 So.2d at 161. Research discloses no case in which failure to waive answer under oath has been held to permit an otherwise incompetent witness to testify in open court.
The objection by counsel for appellant at trial did, in fact, focus upon the matter which is now urged — that the testimony of Mary Davis Medders was incompetent as being in violation of Miss.Code Ann. § 13-1-7 (1972), the Deadman’s Statute. Appellant stated that “this is all self-serving”, to which the Court replied, “I don’t believe that’s any valid objection to it.”
The rationale underlying the Deadman’s Statute is that self-interested testimony should not be permitted to establish a claim against one whose lips have been sealed by death. Poole v. McCarty, 240 Miss. 341, 127 So.2d 398 (1961). The objection that Mary "Davis Medders’ testimony was “self-serving” focused on the very basis of the prohibition.
We conclude that permitting the claimant, Mary Davis Medders to testify to establish her own claim against the Estate of Yewing Winon Medders which originated during the lifetime of the decedent was reversible error.
III.
The chancellor concluded that since Mary signed the mortgage agreement along with her husband, she thereby became obligated on the note along with her husband. Thus, the chancellor reasoned, Mary “shared equally in paying for the land.” (R. 357).
The general rule is that when a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid. Shrader v. Shrader, 119 Miss. 526, 81 So. 227 (1919); Restatement (Second) Law of Trusts § 440 (1959). A resulting trust, unlike a constructive trust or an equitable estoppel, is not a remedial device for the prevention of unjust enrichment. Bogert & Bogert, Law of Trusts § 71 (5th Ed. 1973). The basis of a resulting trust is “that the person seeking to assert the trust actually made payment or partial payment for the property allegedly in trust at the *689 time that the property was conveyed.” Leininager v. Leininager, 705 F.2d 727 (5th Cir.1983). The fact of payment must be established beyond a reasonable doubt. Matter of Estate of Evans, 359 So.2d 1381, 1383 (Miss.1978); Logan v. Johnson, 72 Miss. 185, 16 So. 231, 232 (1894).
In the case sub judice, the deed to the 80 acre homeplace recites that the purchase price was “paid by Y.W. Medders.” Mary does not claim to have furnished any portion of the purchase price. The chancellor’s finding of a resulting trust was based solely on the Farm Security Administration loan agreement, which Mary and Yewing both signed as “mortgagor.”
Thus, the question here is whether the signature of both husband and wife as “mortgagor” on a purchase money loan agreement establishes “payment” by the wife so as to give rise to a resulting trust in her favor?
Cox v. Cox, 183 So.2d 921 (Miss.1966) presents a similar fact situation. The parties divorced and the decree held the wife to be the owner of a one-half undivided interest in the homestead based upon a resulting trust. 183 So.2d at 923. The husband appealed and this Court reversed.
The appellant purchased their homestead on credit. The deed was made to him, but it was necessary for his wife to sign the purchase money mortgage and the notes. There is no record that Mrs. Cox put any money into the purchase of the ‘ homestead at the time of the purchase.
183 So.2d at 923.
In Matter of Estate of Evans, 359 So.2d 1381 (Miss.1978) is also on point. Evans and Spearman were ceremonially married and lived as husband and wife for 19 years. Upon Evans’ death Spearman claimed ownership of property disposed of by Evans’ will. The lower court found Spearman to be the owner of an undivided one-half interest in the house and lot based upon the fact that in signing the loan instruments, Spear-man had obligated himself for the payments. 359 So.2d at 1383. This Court reversed, stating:
The chancellor seems to have based his conclusion that a resulting trust had arisen almost solely upon the fact that Spearman, in signing the trust deeds and notes, had become obligated for their payment. The circumstances are entirely consistent with the fact that the lender required the signature of “her husband” as the property was, ostensibly, a homestead. As stated, there is no evidence of any payment by Spearman upon the purchase money debt, notwithstanding some testimony that he worked and helped the family. On the contrary, there is evidence of payments by Elizabeth Evans Spearman. The proof tending to support the finding of a resulting trust does not meet the standard required under the circumstances.
The chancellor’s ruling in the case sub judice is in conflict with this Court’s decisions in Cox and Evans. The signature of a spouse on a loan agreement without more does not give rise to a resulting trust in the property purchased in favor of the spouse. As this Court’s decisions recognize, any rule to the contrary would ignore customary lending practice. This court concludes that the proof here, even with Mrs. Mary Medders’ testimony, fails to establish a resulting trust.
IV.
The third assignment of error is the trial court’s ruling that Mary was entitled to an equitable one-half interest in the 80 acre homeplace on the theory of an equitable estoppel arising out of the 1946 divorce decree.
In light of our holding with reference to the receipt of the testimony of Mary Davis Medders, we are of the opinion that the proof on this issue should be re-evaluated in light of the exclusion of the incompetent evidence.
V.
Appellant’s fourth assignment of error, that the trial court erred in refusing to hold that Mary’s claim to an interest in the *690 homeplace was barred due to laches, is without merit. Appellant reasons that Mary’s interest arose in 1939 or 1946. However, her claim, if any, did not arise until that interest was violated by Yewing’s conveyance of the property to his brother in January of 1978. No error is noted here.
VI.
The Estate of Mary Davis Medders cross appeals on the chancellor’s ruling that Mary Medders was estopped to claim unpaid alimony.
Statutory authority for bringing an action to collect past due alimony payments is found in Miss.Code Ann. § 15-1-43 (1972) which reads as follows:
All actions founded on any judgment or decree rendered by any court of record in this state, shall be brought within seven years next after the rendition of such judgment or decree, and not after, and an execution shall not issue on any judgment or decree after seven years from the date of the judgment or decree.
This statutory authority was recognized in the case of Rubisoff v. Rubisoff, 242 Miss. 225, 133 So.2d 534 (1961), where it was stated that “[i]t is a well-settled rule of law in this State that installments of alimony become fixed and vested when due and unpaid.” 242 Miss. 235, 133 So.2d at 537.
In the case of Schaffer v. Schaffer, 209 Miss. 220, 46 So.2d 443 (1950), this Court held that a claim for past-due alimony was probatable against the estate of the deceased husband, but limited to back alimony for seven years maximum.
The foregoing cases of Rubisoff and Schaffer both dealt with fixed amounts of alimony which had become due and payable, yet remained unpaid. In Rubisoff the claim was against the husband while he lived, but in Schaffer the claim was against the estate of the deceased husband and was probated.
The trial court, in its written opinion, stated in denying the claim for alimony that:
She had continued for a long period of time to accept the support provided by him, including the providing of a house and the payment of utilities, hospital insurance, burial insurance, and a limited amount of cash. There is no evidence that she made complaint during his lifetime. I consider that after his death she was estopped to raise the question of adequacy of his support_ Her recourse was to return to the court for modification of the divorce decree if she considered support inadequate.
No probated claim was filed within the statutory period. Miss.Code Ann. § 91-7-145 (Supp.1982).
The amount required under the divorce decree was unliquidated. The record reveals some support was furnished; the question of adequacy of support should have been litigated during the lifetime of Y.W. Medders. We agree that with the trial court’s finding that Mary Davis Med-ders is estopped from raising the question of adequacy of support. The cases cited by appellee (cross-appellant), Rainwater v. Rainwater, 236 Miss. 412, 110 So.2d 608 (1959) and Gibson v. Clark, 216 Miss. 430, 62 So.2d 485 (1953), do not stand for the proposition that a surviving spouse can successfully raise this question against the estate of the deceased spouse. To the contrary, the cases cited dealt with fixed amounts of alimony which became due and payable and thus vested, and yet, remained unpaid. There was no question about adequacy or inadequacy which is the issue here and distinguishes this case from cases relied upon by appellee.
We affirm the chancellor’s holding on this issue.
Therefore, we reverse the chancellor’s holding on the admission of incompetent evidence and holding that proof established a resulting trust, and remand for a retrial not inconsistent with this opinion. If the Estate of Mary Davis Medders can establish equitable estoppel based upon the 1946 divorce decree by competent evidence, such avenue is open to them on remand. We *691 affirm the chancellor’s holding on the cross-appeal.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.