## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00287-SCT

*MARTHA T. BENNETT*

*v.*

*JAMES BENNETT*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/05/94 |
| TRIAL JUDGE: | HON. EDWARD C. PRISOCK |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | EDWARD A. WILLIAMSON |
| ATTORNEY FOR APPELLEE: | HELEN J. MCDADE |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED - 12/15/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/5/98 |

**BEFORE DAN LEE, C.J., BANKS AND ROBERTS, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

Martha and James Bennett were divorced on December 10, 1993 on the ground of Mr. Bennett's adultery. The chancery court divided some of the property that the Bennetts had acquired over the course of their marriage, and declined to otherwise award alimony or attorneys' fees. Mrs. Bennett appeals this decree. Because the chancery court did not make an adequate adjudication of the marital estate along the guidelines that were enunciated in this Court's decisions in **Ferguson v. Ferguson,** 639 So. 2d 921 (Miss. 1994), and **Hemsley v. Hemsley**, 639 So. 2d 909 (Miss. 1994), we reverse and remand the cause for further consideration.

### I.

James and Martha Bennett were married in 1965 in Neshoba County, Mississippi, and they subsequently had three children together. During their marriage, Mr. Bennett worked continuously and Mrs. Bennett worked irregularly, and not at all prior to her children reaching school age. The Bennetts entered their marriage virtually propertyless, but acquired several different parcels of

property over the years, including a home, a cabin at the Neshoba County Fairgrounds, large tracts of land containing merchantable timber, and an array of farm equipment. Some of the property was titled in his name, some was titled in her name, and some of it was titled jointly. Although the testimony is conflicting about the debts, the Bennetts stipulated that all of the debts on the real property (which were considerable) were joint liabilities. While Mr. Bennett was the primary income provider through pipelining work and running their chicken enterprise outside of the home, Mrs. Bennett contributed to the acquisition of their estate not only through taking care of the home and the children, but through actual assistance in their various business enterprises in the bookkeeping and actual operation.

In July, 1992, Mrs. Bennet filed for a divorce on the grounds of habitual cruel and inhuman treatment, adultery, and irreconcilable differences. She requested the court to order a division of marital property, alimony, child support and custody of the one remaining minor child, as well as a number of other specific requests about Mr. Bennett's duties. Mr. Bennett filed a cross-claim for divorce on the ground of habitual cruel and inhuman treatment and irreconcilable differences. He also requested custody of the minor child, child support, and alimony. Both parties also moved for temporary relief, which was granted.

The hearing on the complaints began on June 8, 1993. The chancery court bifurcated the proceeding, adjudicating the division of property prior to addressing the merits of the divorce. In August, following the hearing on the property issues, the court issued an Opinion in which it made several findings of fact and divided various items of property. This resolution of the property issues was to be incorporated into the final divorce decree, presuming that a divorce was to follow the remaining portion of the proceeding.

In this Opinion, the court found that the Bennetts had acquired numerous parcels of property, and debts well in excess of $200,000. The court also found that Mr. Bennett had secretly sold cattle to stock yards after the commencement of the divorce proceedings.

The court awarded Mrs. Bennett several household items of personal property along with a Massey Ferguson tractor. Citing **Clark v. Clark**, 293 So. 2d 447 (Miss. 1974), the court further held that Mrs. Bennett was entitled to an equitable division of the marital assets, finding that: (1) she was actively involved in the operation of the chicken business; (2) the marriage lasted for thirty years; (3) she was in need of a means of support, and had no other means of making a living at her age with her training and education; (4) she was jointly indebted to the lending institutions for the financing of the chicken business, resulting in a very large liability.

Thus, the court awarded her the following marital assets: the three newest chicken houses that the Bennetts had been operating as a business; exclusive use of the Bennetts' residence; and the entire value of what had been their joint escrow account that held the proceeds from the chicken houses. The chancellor granted Mrs. Bennett the entire interest in that escrow account in order to compensate her for her interest in some cattle which Mr. Bennett had secretly sold after the commencement of the divorce proceedings.

The court awarded Mr. Bennett several household items as well as a tractor, a tractor disc and blade, a post hole digger, a spreader truck, an electrical generator and a flat bed truck. He was also awarded the exclusive use of six older chicken houses. The court made no other distributions.

Eleven days after this Opinion was issued, but prior to the conclusion of the divorce portion of the proceedings, Mrs. Bennett filed a Motion to Modify and Make Specific the Court's Opinion. In that motion, Mrs. Bennett petitioned the court to address and clarify the division of various items of property. First, she itemized 26 items of property comprising mainly farm equipment, automobiles, a bushhog and a $6,000 mutual fund that had been the subject of testimony during the hearing but were not disposed of in the court's opinion.

Second, Mrs. Bennett protested the Court's analysis of her interest in the cattle that Mr. Bennett had secretly sold for his own profit. The court had expressly awarded her the entire value of a jointly held escrow account to compensate for that loss, as opposed to limiting her award to a one-half equitable interest. In her motion, Mrs. Bennett argued that this was not sufficient compensation for her interest in the cattle that Mr. Bennett had secretly sold. She argued that her interest in the cows amounts to $26,100, since she argued that Mr. Bennett testified that the cattle sales had earned him $52,200.[1]

Mrs. Bennett argued that the value of the escrow account does not adequately compensate her for the cattle sales because the escrow account had a balance of $23,257, half of which was already hers before any adjustments were made to redress her loss in the secret cattle sales. Furthermore, since this account was set up to meet emergency financing needs of the chicken house enterprise, Mrs. Bennett cannot freely use that money as she would have used her cash interest in the cattle sales. Instead, Mrs. Bennett urged the court to award her an extra portion of the equity in the timber rights on a parcel of land that the Bennetts had jointly owned.

Third, Mrs. Bennett requested the court to dispose of a 164.5 acre parcel of land in Winston County that held timber that was worth about $70,000. This parcel had been the subject of testimony at the trial. Mrs. Bennett urged the court to order all of the merchantable timber to be cut and to order the resulting proceeds to be first applied to compensate her interest in the secret cattle sales, and the remainder to be applied to the Bennetts' vast debt. She also requested that the court equitably distribute the parcel of land, as it had declined to dispose of the property in its Opinion.

On September 7, 1993, Mrs. Bennett also filed a Motion to Re-Open Case in Regard to Property, requesting the court to reopen the hearing and receive additional evidence about who would receive a fair cabin that the Bennetts owned at the Neshoba County Fairgrounds. The court had already heard some testimony about the cabin.

Although the court noted orally in response to these motions that the personal property was just a "big confusing mess," and that it would not reopen the inquiry into the fair cabin, the court did not expressly address them outside of its final judgment and order on the divorce. In the final judgment, which issued on December 10, 1993, the court first granted Mrs. Bennett a divorce on the grounds of adultery. With the exception of three items of property (a Ford tractor and two automobiles), the court overruled Mrs. Bennett's Motion to Modify and Make Specific in its entirety. In doing so, the court declined to adjudicate the remaining twenty-three items of property that Mrs. Bennett had itemized, declined to alter its analysis of her interest in the secretly sold cattle, and further declined to divide the 164.5 acre tract of land and its accompanying merchantable timber. The court denied Mrs. Bennett's requests for alimony and attorneys' fees, and assessed court costs against James Bennett. The court ordered both Bennetts to do all things necessary and proper to transfer title in accordance with his order.

On January 5, 1994, the court issued an Amendment to Final Judgment, which amended an erroneous property description. The map which was attached to the original Final Judgment had included a 49 to 54-acre parcel of land in the area that had been awarded to Mrs. Bennett and which the court had not intended to adjudicate one way or the other. His amended judgment thus removed this portion from Mrs. Bennett's award.

After some disputes among the attorneys, the court issued its Composite Final Judgment on February 4, 1994. In that judgment, the court amended its previous judgments to award another automobile to Mrs. Bennett. The court also added a handwritten note on page three of the order that "no opinions rendered by this court have ever indicated that title to any real property should be divested from either party." In accordance with this note, he scratched out the section that had theretofore ordered Mr. Bennett to do all things necessary and proper to transfer title of the properties that had been awarded to Mrs. Bennett. Inexplicably, the court left intact the similar language that ordered Mrs. Bennett to do all things necessary and proper to transfer title of the properties that had been awarded to Mr. Bennett.

In the introductory paragraph of this Composite Final Judgment, the court stated that the first judgment entered "failed to order and adjudge that the monies owed on both the six original and three new chicken houses are joint liabilities of both parties." He then proceeded to nevertheless scratch out (with his initials) the sentence that had been inserted on page five of the order asserting that the debts were to be joint liabilities of the parties.

Following the issuance of the Composite Final Judgment, Mrs. Bennett moved under Miss. R. Civ. P. 52 and 59 for Findings of Fact, Amendment of Judgment and New Trial on February 7, 1994. She petitioned the chancery court to make findings of fact and awards of ownership about the various items of property first noted in its Motion to Modify and Make Specific, including the 164.5-acre tract of property in Winston County, the merchantable timber, and the portion of property deleted from Mrs. Bennett's award in the Amendment to Judgment Correcting Error. Mrs. Bennett also requested the court to clarify the confusion in the Composite Final Judgment about the joint liabilities of the parties, and to make findings of fact about the comparative value of the various properties that were adjudicated. Mrs. Bennett also moved for a new trial in which to establish the ownership of the fair cabin and the multitude of unadjudicated properties.

She further asserted that the failure of the court to award her fee simple ownership so as to enable her to refinance her obligations placed her in desperate financial circumstances, in part because Mr. Bennett had retained actual possession of and legal title to the substantial personal property which the court had not adjudicated. She further noted that the state of the title left each party a survivorship interests in all of the property.

Additionally, Mrs. Bennett noted that the funds in the escrow account which she had been awarded had been applied against the mortgage on the chicken houses, leaving her with only about $7,000 as of the date of the motion. Thus, she urged the court to reconsider its denial of her request for alimony.

Mrs. Bennett also filed a contemporaneous Motion to Recuse, arguing that the various amendments to the court's three successive judgments demonstrated bias and prejudice in favor of Mr. Bennett.

Thus, she urged the court to recuse itself after making findings of fact and ordering a new trial.

In response to these motions, the Court held a hearing on March 11, 1994 at which it declined to recuse itself on the record. Without hearing any argument, it issued a final Order and Opinion denying the motion for new trial.[2] The court made several important rulings, including:

(1) findings on the comparative values of all of the personal property would be impossible, given the lack of evidence of value of some of the items. It also ruled that such findings would be irrelevant to the courts ultimate decision;

(2) the request to make findings about Mrs. Bennett's contributions and equity in all of the property was "in the nature of a discovery deposition," and had been adequately addressed in the prior decisions in the case;

(3) the court's failure to make any award of the 164.5 acre tract in Winston County or the 49 acres of land that had been removed from Mrs. Bennett's original award had been adequately addressed in the previous judgments and in a special conference on the record, in which the court notes that it never intended to adjudicate this parcel at all, and had erroneously awarded it to Mrs. Bennett in its original Final Judgment;

(4) it had considered the issue of whether the merchantable timber should be harvested and its profits awarded to the parties, and would not review its decision not to itemize the timber as an item of marital property;

(5) the reference to the joint liabilities of the parties that was made in the Composite Final Judgment was only meant to reflect the fact the court had considered the joint nature of the liabilities as one of the criteria that was used as a basis for the division of all of the property, not as a basis for any assessment of liability for payment;

(6) finally, it would not order any further partition of property in order to enable the parties to separate their holdings and obligations because doing so could force the lending institutions (or the chicken buyers) to take actions that would lead to a result not foreseen by and out of the control of the court.

In response to this final order of the chancery court, Mrs. Bennett petitioned this Court on March 24, 1994 for a Writ of Mandamus, requesting that this Court order the chancery court to partition and make awards of all items of personal and real property not theretofore decided, order all things necessary to separate the debt on the chicken houses, order the sale of the merchantable timber, and order the chancellor to consider recusing himself from further service, since the chancellor had told Mrs. Bennett's attorney that a supervisor had attempted to speak with him on behalf of Mr. Bennett. The petition was denied on April 7, 1994.

Mrs. Bennett presently appeals this final order of the chancery court, raising several issues.

## II.

I. THE CHANCELLOR FAILED TO DETERMINE THE EXTENT, AND CORRESPONDING VALUE OF, THE MARITAL PROPERTY

Mrs. Bennett first argues that the chancery court erred in failing to adjudicate the value and extent of the marital estate. Noting that the court conceded its confusion at the vast array of personal and real property, Mrs. Bennett cites *Ferguson v. Ferguson,* 639 So. 2d 921 (Miss. 1994), and *Hemsley v. Hemsley*, 639 So. 2d 909 (Miss. 1994), for the proposition that the chancery court should have allowed sufficient testimony to alleviate his confusion and aid a determination of the fair market value of the multitude of assets that the Bennetts had acquired over the course of their marriage.

This Court will not disturb the findings of a chancellor unless manifestly wrong. *Newsom v. Newsom*, 557 So. 2d 511, 514 (Miss. 1990). In *Hemsley,* this Court held that "[a]ssets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." This Court further held that "[w]e assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value." *Hemsley,* 639 So. 2d at 914-15.

Mr. Bennett counter-argues in this appeal that the chancellor did not consider the multitude of unadjudicated properties as part of the marital estate because he must have found that Mrs. Bennett had only made a substantial contribution to the chicken business, and no other aspect of the estate.

Mr. Bennett's argument, however, does not properly reflect the law. While the nature of a spouse's contribution to the marital estate may be relevant to the division of the estate, it is irrelevant to the substance of the marital estate, which *Hemsley* defines as all assets acquired during the course of the marriage. Moreover, Mrs. Bennett's conceded contributions to the chicken enterprise (not to mention her contributions to the rearing of the children and the care of the home) can only logically be understood to have contributed to the acquisition of the other properties that was undertaken with the profits from the chicken enterprise.

Thus, we find that the chancery court erred in declining to consider the multitude of properties that, according to the stipulations and the live testimony, comprise the Bennetts' marital estate, and which have been repeatedly enumerated in Mrs. Bennett's various motions for adjudication of the items and parcels. Thus, we are compelled to remand this cause for further adjudication in this regard.

## II. THE CHANCELLOR ERRONEOUSLY FAILED TO EQUITABLY DIVIDE THE MARITAL PROPERTY

Mrs. Bennett next argues that the chancery court's division of property was erroneously inequitable. In particular, she notes the court's failure to adjudicate a substantial amount of marital property and its failure to clear up the confusion about whether both parties were required to transfer title with respect to the properties that were adjudicated, which would have enabled the Bennetts to make respective arrangements about their joint debt.

In *Ferguson,* this Court outlined the factors which should guide a chancellor's analysis when performing an equitable division, including:

1. Substantial contribution to the accumulation of the property. . . . [;]

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise[;]

3. The market value and the emotional value of the assets subject to distribution[;]

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928. This Court further held that findings of fact and legal conclusions must be made in order to enable appellate review about these factors. *Id*. at 929.

Not having the benefit of *Ferguson*'s elucidation, the lower court failed to conduct an analysis that reflected any consideration of several of the *Ferguson* factors, particularly the fifth and seventh factors (consideration of economic consequences of the division and the need for financial security). Therefore, we also remand the chancery court's equitable distribution for further determination in light of the several *Ferguson* factors. These factors should provide some guidance in analyzing on remand the import of the Bennetts' joint debts in determining an equitable division, and the utility of ordering transfer of title.

## III. THE CHANCELLOR ERRONEOUSLY DENIED THE APPELLANT'S REQUEST FOR LUMP SUM AND PERIODIC ALIMONY

Mrs. Bennett next argues that the chancery court erred in denying her request for alimony. The decision to award alimony is largely within the discretion of the chancellor, and a decision in this regard will not be disturbed on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error. *McNally v. McNally*, 516 So. 2d 499, 501 (Miss. 1987).

In its Opinion following the divorce portion of the proceeding, but preceding the actual decree, the chancery court stated that "[t]he Court is of the opinion that since the division of the property was done in such a manner to ensure the Plaintiff of a livelihood by operating the chicken houses, further relief in the form of periodic or lump sum alimony is not warranted." It made no further findings of fact on the matter, nor suggested that it had otherwise considered the numerous factors that this Court has held should be considered in *Cheatham v. Cheatham*, 537 So. 2d 435 (Miss. 1988) (lump-sum alimony), or *Hammonds v. Hammonds*, 597 So. 2d 653 (Miss. 1992) (periodic alimony).

This Court has held that the determination of whether alimony is warranted should be considered

together with the determination of property division and child support provisions. We therefore direct the chancery court to review its denial of alimony as it conducts its equitable distribution of all of the property on remand. *Ferguson,* 639 So. 2d at 929.

## IV. THE CHANCELLOR ERRED IN FAILING TO ORDER THE SALE OF MERCHANTABLE TIMBER SO AS TO REDUCE MARITAL DEBT

Mrs. Bennett next argues that the chancery court erred in denying her repeated requests that he order their merchantable timber harvested and the proceeds applied against the Bennetts' joint debt. As with the rest of the marital property that the chancery court failed to address, we remand this cause in order that the chancery court apply the ***Ferguson*** analysis to the timber, and, thereafter, equitably distribute it.

## V. THE CHANCELLOR ERRONEOUSLY FAILED TO AWARD ATTORNEYS' FEES TO MARTHA BENNETT

Finally, Mrs. Bennett argues that the chancery court erred in declining to award her attorneys' fees. Mrs. Bennett states that she is unable to pay her attorneys' fees because of Mr. Bennett's secret sale of cattle, which deprived her of money with which to pay her attorney.

The question of attorneys' fees in a divorce action is a matter largely entrusted to the sound discretion of the trial court. Where a party has not shown an inability to pay, attorneys' fees are generally not appropriate. ***Jones v. Starr***, 586 So. 2d 788, 792 (Miss. 1991).

Nevertheless, an award of attorneys' fees, or the failure to make such an award, is an economic ruling which arises out of a chancery court's assessment of the financial position of the parties. Thus, in light of the fact that the entire matter of the economic and property distribution needs to be remanded for redetermination, the query of whether Mrs. Bennett can afford to pay her attorneys' fees needs to be reconsidered on remand as well. *See, e.g.* ***Brooks v. Brooks,*** 652 So.2d 1113, 1120 (Miss. 1995) (ability to pay attorneys' fees may be evaluated after the chancellor awards alimony and property to the parties upon remand); ***Brabham v. Brabham***, 226 Miss. 165, 177, 84 So.2d 147 (1955) (where alimony and child support have been remanded, chancery court should make adjustments for attorneys' fees).

## III.

For the foregoing reasons, we vacate the chancery court's final order, and remand this cause for reevaluation in light of the guidance of this Court's decisions in ***Hemsley*** and ***Ferguson***. On remand, the chancery court should specifically determine the extent, value, and equitable distribution of the marital property that was the subject of testimony at the court's initial hearing on the matter, and was the subject of Mrs. Bennett's repeated requests for clarification.

**REVERSED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, McRAE, ROBERTS AND SMITH, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. MILLS, J., NOT PARTICIPATING.**

1. These figures that Mrs. Bennett asserts in this motion are not apparent from the testimony in the record. Mr. Bennett testified that he had sold thirty or forty cows for around $45,000. He further testified that he traded an additional twenty cows for a tractor, later indicated to be the Massey Ferguson tractor. He valued those cows at an average of $325 a piece, which would total $6,500, bringing the aggregate of the cattle sale proceeds to $51,500 (not discounting for any worth of the tractor that Mr. Bennett claimed he received for the last twenty cows; in any event, he subsequently gave the tractor to Mr. Aubrey Warren, who had done some work on it). Mr. Bennett also testified, however, that this batch of cows was probably worth between $8000 and $9,000. In any case, assuming that the cows' value was $325 per head, Mrs. Bennett figure of $52,200 is $700 above our simple calculations, and her source for her figure remains unclear. Although the record is difficult to comprehend, it seems that her equitable interest in the cattle sales amounts to only $25,750; in any event we leave this calculation to the trial court to determine on remand.

2. Although this Opinion is the chancery court's final order from which Mrs. Bennett appeals, it is not included in the Record Excerpts. It can be found in the Clerk's Papers at 135.