856 So.2d 717 (2003)
Nellie Lou SMITH, Appellant,
v.
John William SMITH, Appellee.
No. 2002-CA-01657-COA.
Court of Appeals of Mississippi.
October 7, 2003.
*718 Deedy Boland, Tupelo, attorney for appellant.
C. Michael Malski, attorney for appellee.
EN BANC.
MYERS, J., for the Court:
¶ 1. Nellie Lou Smith was granted a divorce from her husband, John William Smith, on the ground of desertion. She disagrees with the chancellor's equitable distribution of marital property and his decision regarding alimony. She appeals to this Court, stating the following issues for our consideration:
I. WHETHER THE CHANCELLOR FAILED TO MAKE AN EQUITABLE DIVISION OF THE MARITAL ESTATE BY FAILING TO PROPERLY CLASSIFY CERTAIN ASSETS, FAILING TO PROPERLY VALUE CERTAIN ASSETS, AND FAILING TO MAKE SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW RELATING TO APPLICABLE FERGUSON FACTORS.
II. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD PERIODIC ALIMONY TO NELLIE SMITH.
III. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD ATTORNEY'S FEES TO NELLIE SMITH.

Facts and Procedural History
¶ 2. John William Smith filed for divorce from Nellie Lou Smith on October 22, 1997. He cited grounds of habitual cruel and inhuman treatment and adultery, or in the alternative, irreconcilable differences. Nellie Smith filed a counterclaim for divorce based on habitual cruel and inhuman treatment, abandonment and adultery, or in the alternative, irreconcilable differences.
¶ 3. The chancellor found no basis for John to be granted a divorce for either habitual cruel and inhuman treatment or adultery. John's claim was denied. Nellie's divorce was granted on the ground of willful, continued, and obstinate abandonment for one year.
¶ 4. The chancellor listed the following items of property as in dispute: the marital home, several pieces of real estate, and several vehicles. Additionally, the Smiths had an IRA worth approximately $44,484, a thrift plan worth $20,646, a retirement plan that paid John $253.80 a month, and a credit union account worth $101.
¶ 5. Nellie was awarded the home and the 18.63 acres on which it sat, the 63/100 acre used to gain access to the homestead, a 55 acre tract, 2 acres purchased at a sheriff's sale, a 50% interest in the two retirement accounts, and a 1987 Toyota Supra. John received numerous items of personal property; 1990 Dodge truck, a 1990 Dodge van, a 1992 GMC truck, a 50% interest in the retirement plans, and the $253.80 he received a month from his retirement accounts.
¶ 6. The chancellor denied alimony to Nellie as well as attorney's fees.

I WHETHER THE CHANCELLOR FAILED TO MAKE AN EQUITABLE DIVISION OF THE MARITAL ESTATE BY FAILING TO PROPERLY CLASSIFY CERTAIN ASSETS, FAILING TO PROPERLY VALUE CERTAIN ASSETS, AND FAILING TO MAKE SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW RELATING TO APPLICABLE FERGUSON FACTORS.
*719 ¶ 7. The standard of review of all the issues presented is abuse of discretion. The chancellor is granted wide discretion in deciding domestic relations matters and we will reverse his decision only when his decision is shown to be manifestly wrong, clearly erroneous, or that he applied an incorrect legal standard. Barton v. Barton, 790 So.2d 169, 175(¶ 17) (Miss.2001) (citing Cummings v. Benderman, 681 So.2d 97, 100 (Miss.1996)).
¶ 8. In dividing the property of the divorcing couple, the chancellor must first classify their assets and liabilities as belonging to the marriage, to the husband, or to the wife. Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994). Once this is done, the chancellor must look to the factors set out by the supreme court in Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994). The Ferguson factors are used to determine how to divide the marital assets between the divorcing couple.
¶ 9. The chancellor listed the assets of the Smiths according to who held legal title to them. He did not identify them as assets of the husband, of the wife, or of the marriage. The chancellor did then distribute the assets, assigning some that were titled in John's name, for example, to Nellie. However, without knowing what was marital property and what was the separate property of the spouses, we cannot fairly evaluate the equitable distribution. We therefore hold that the chancellor abused his discretion in classifying and distributing the assets of the marital estate.

II. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD PERIODIC ALIMONY TO NELLIE SMITH.
¶ 10. The factors to be considered when deciding whether periodic alimony is appropriate are: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; or (12) any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss. 1993). These factors are used to determine whether alimony is proper in a case. The chancellor did not use these factors, but instead used the Hemsley factors, which are used to determine if alimony is reasonable. Hemsley, 639 So.2d at 912-13. Since he applied the wrong legal standard, the determination of alimony is reversed and remanded.

III. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD ATTORNEY'S FEES TO NELLIE SMITH.
¶ 11. Since we have already reversed and remanded for the other two issues in this case, we also reverse and remand for a determination of the issue of attorney's fees. The distribution of marital property and receipt of alimony, if any, will have a role in the determination of whether Nellie should receive attorney's fees from John. Lauro v. Lauro, 847 So.2d 843, 850(¶ 18) (Miss.2003).
¶ 12. THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS AFFIRMED AS TO THE DIVORCE AND REVERSED AND REMANDED *720 AS TO ALIMONY, ATTORNEY'S FEES AND DISTRIBUTION OF MARITAL PROPERTY. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, P.J., BRIDGES, THOMAS, LEE, AND CHANDLER, JJ., CONCUR.
SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., BRIDGES, LEE, IRVING, AND GRIFFIS, JJ.
SOUTHWICK, P.J., Concurring:
¶ 13. The majority reverses the alimony award because the chancellor pulled from his file the wrong set of factors to use. It is clear that the chancellor applied factors identified by the Supreme Court for determining the amount of alimony, but it was not the latest iteration of those considerations. I do not believe that any error occurred, as there is too little difference in the lists.
¶ 14. The chancellor considered nine factors set out in a 1994 precedent for making alimony determinations. Hemsley v. Hemsley, 639 So.2d 909, 912 (Miss.1994). That case is better known for providing rules regarding marital property, but it also contains a list of considerations for the award of alimony. I do not understand the case to mean what the majority states, that Hemsley determines the reasonableness of the alimony award while the favored Armstrong case is for whether any alimony should be awarded at all. A chancellor determines both matters together, not in stages. Armstrong itself addresses the relationship between the cases, as I now explain.
¶ 15. The Supreme Court in Armstrong took the factors from a case that it decided the previous year. Armstrong v. Armstrong, 618 So.2d 1278, 1281 (Miss.1993), quoting Hammonds v. Hammonds, 597 So.2d 653, 655 (Miss.1992). The Armstrong court also cited the 1955 case from which Hemsley would take its nine factors. Armstrong, 618 So.2d at 1281, citing Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955). In a footnote to the Brabham citation, the court in Armstrong discussed the relationship between the different lists of needed considerations.

Hammonds revised and added factors for consideration. See Gammage v. Gammage, 599 So.2d 569, 573 (Miss. 1992) and Cleveland v. Cleveland, 600 So.2d 193, 197 (Miss.1992), however, where the Brabham factors were again approved. Also see White v. White, 557 So.2d 480, 483 (Miss.1989) and Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988) for factors considered in awarding lump sum alimony.
Armstrong, 618 So.2d at 1281 n.1.
¶ 16. Hemsley was decided a year after Armstrong, and it referred to Brabham for its authority. Hemsley, 639 So.2d at 913. I accept that the twelve step program enumerated in Hammonds and Armstrong is now the recommended method for deciding alimony. Still, reversal should not flow solely from nine steps being used.
¶ 17. The majority quotes the twelve Hammonds-Armstrong considerations. I quote the nine Brabham-Hemsley ones: "(1) the health of the husband and his earning capacity; (2) the health of the wife and her earning capacity; (3) the entire sources of income of both parties; (4) the reasonable needs of the wife; (5) the reasonable needs of the child; (6) the necessary living expenses of the husband; (7) the estimated amount of income taxes the respective parties must pay on their incomes; (8) the fact that the wife has the free use of the home, furnishings and automobile, and (9) such other facts and circumstances *721 bearing on the subject that might be shown by the evidence." Hemsley, 639 So.2d at 912-13, quoting Brabham, 84 So.2d at 153 (line breaks removed).
¶ 18. I do not find a reversible error measure of difference between the lists. Both have a catch-all provision that other relevant facts should be considered. Neither list therefore is exclusive. These factors are intended to guide the chancellors in making decisions and assist appellate courts in their review function. Our holding is perilously close to making the determinations little more than rituals, with affirmance dependent on the correct chant being intoned by the trial judge. The Supreme Court through the factors for alimony and for other issues in divorce suits has sought to bring a formal system to the determinations. We should avoid, though, making the means dominate over the ends. The factors in each list are representative of what should be considered. This chancellor considered the proper broad issues, used a set of factors approved by the Supreme Court, and awarded a reasonable amount of alimony.
¶ 19. I nonetheless agree with setting the alimony determination aside since we are also, properly, setting aside the distribution of marital property. Changes in the allocation of property may alter the need for or the amount of alimony. Therefore even if the correct incantation had been performed, we should set the alimony award aside in order that all interrelated financial issues may be reconsidered.
McMILLIN, C.J., BRIDGES, LEE, IRVING AND GRIFFIS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.