981 So.2d 1052 (2008)
James STRONG, Appellant
v.
Gretchen STRONG, Appellee.
No. 2006-CA-01987-COA.
Court of Appeals of Mississippi.
April 29, 2008.
Clement S. Benvenutti, Louis, attorney for appellant.
Kelly Michael Rayburn, Gulfport, attorney for appellee.
Before KING, C.J., ROBERTS and CARLTON, JJ.
KING, C.J., for the Court.
¶ 1. On June 12, 2006, James and Gretchen Strong were granted a divorce based on irreconcilable differences by the Hancock County Chancery Court. While the parties agreed to the divorce, they consented to have several issues adjudicated by the chancellor. Aggrieved by the chancellor's decision regarding several of these issues, James files this appeal.
¶ 2. He alleges several points of error that will be consolidated into the following two issues: (1) whether the chancellor erred in requiring James to pay temporary child support arrearage and (2) whether the chancellor erred in the equitable distribution *1053 of the insurance proceeds. We affirm the chancery court's award of temporary child support arrearage. However, we reverse and remand the issue of equitable division of the marital property.

FACTS
¶ 3. On June 8, 1996, James and Gretchen were married in Hancock County, Mississippi. The couple remained residents of Hancock County until the time of their separation in July 2004. During the marriage, they had three children, Trevor, Abrey, and Tyler.
¶ 4. On July 19, 2004, Gretchen filed a complaint for divorce and temporary relief based on the grounds of habitual drunkenness, habitual cruel and inhuman treatment, and alternatively, for irreconcilable differences. She also filed a petition for protection from abuse. James answered the petition and also filed a counterclaim for divorce and temporary relief based on the grounds of adultery and habitual cruel and inhuman treatment. No order was entered on either petition.
¶ 5. The parties reconciled after filing the pleadings, but on May 19, 2005, the couple separated permanently. On June 29, 2005, Gretchen filed a second petition for protection from abuse, and the chancellor granted a temporary restraining order in this matter. The chancellor then ordered that Gretchen have temporary and exclusive use of the marital home and her automobile. However, the order did not address child custody or child support. On July 8, 2005, the chancellor granted Gretchen a temporary protective order identical to the one previously granted.
¶ 6. On August 29, 2005, Hurricane Katrina substantially damaged the parties' marital home. Gretchen testified that as a result of the insurance claim, she received $51,000 in flood insurance proceeds for the destruction of the home, $21,400 for the damaged contents of the home, and $14,696 in proceeds from the wind, hail, and storm damage policy on the home. These amounts totaled $87,096 in insurance proceeds. Gretchen testified that she did not inform James of the insurance proceeds, but rather, she used the money for family expenses. She testified that she had paid off various amounts of the marital debt, including the mortgage on the marital home. At the time of trial, only $9,696.30 remained of the insurance proceeds, along with the accrued interest. This amount was located in a certificate of deposit (CD) at a bank[1] in Gretchen's mother's name.
¶ 7. On December 2, 2005, Gretchen filed an amended complaint for divorce and requested temporary relief. The parties later agreed, however, to a divorce based on the grounds of irreconcilable differences. On June 12, 2006, the chancellor granted the divorce based on irreconcilable differences.
¶ 8. In her order, the chancellor classified the marital home as marital property and ordered its sale. The net proceeds from the home were to be equally divided between the parties, after deductions were made for James's child support arrearage. The chancellor did not classify or equitably divide the $9,696.30 in insurance proceeds held in the CD by Gretchen's mother. The chancellor stated that since Gretchen's mother was not made a party to the action, she was not able to address that specific asset.
*1054 ¶ 9. James filed a motion to reconsider the judgment and a motion for a new trial. The chancellor denied the motions, and James timely filed this appeal.

STANDARD OF REVIEW
¶ 10. This Court applies a manifest error standard of review to a chancellor's decree of divorce. Peters v. Peters, 906 So.2d 64, 68(¶ 12) (Miss.Ct.App.2004). The chancellor's findings of fact will not be disturbed unless the chancellor's decision is manifestly wrong or unsupported by substantial evidence. Mitchell v. Mitchell, 823 So.2d 568, 570(¶ 7) (Miss.Ct.App.2002).

ANALYSIS
¶ 11. James essentially alleges two errors for us to consider. First, he states that the chancellor erred when she ordered him to pay temporary child support for twelve months predating the entry of an order granting temporary relief. Second, he alleges that the chancellor erred when she stated that she was precluded from making any adjustments for the $9,696.30 in insurance proceeds held in a CD in Gretchen's mother's name.
I. Whether the chancellor erred in requiring James to pay temporary child support arrearage.
¶ 12. James's first allegation of error is that the chancellor erred when she ordered him to pay temporary child support for the twelve months predating the temporary support order. He states that the chancellor was without authority to grant this relief. However, he acknowledges that Gretchen "was entitled to relief pursuant to Miss.Code Ann. § 93-5-17(2) but failed to request the relief from the court thereby waiving the same." Further, two statutes provide for the ordering of child support up to one year prior to the commencement of an action seeking such relief, namely Mississippi Code Annotated section 93-11-65(1)(d) (Rev.2004) and Mississippi Code Annotated section 93-9-11 (Rev.2004) (involving back child support in a paternity action).
¶ 13. In order to obtain child support, it must be requested in the pleadings or be tried by the consent of the parties. Lee v. Stewart, 724 So.2d 1093, 1095-96 (¶¶ 3-4) (Miss.Ct.App.1998). Lee is instructive to this particular case. There, the chancellor awarded one year of past-due support even though the issue was never raised in the original or amended complaints. Id. at 1095(¶ 3). This Court held that since Lee failed to make a contemporaneous objection when the evidence was introduced on the issue at trial, the issue was tried with Lee's implied consent. Id. at 1096(¶ 4) (citing Atkinson v. Nat'l Bank of Commerce of Miss., 530 So.2d 163, 166 n. 2 (Miss.1988)).
¶ 14. In the present case, the circumstances provide even more evidence that the matter was tried with the consent of the parties. On May 1, 2006, the parties signed an agreed order that expressly placed the matter of temporary child support arrearage before the chancellor. The agreed order stated:
The parties submit all other issues relating to the extent of the Husband's visitation with the children, child support, the existence of temporary child support arrearage, health insurance coverage for the children, payment of medical expenses not covered by insurance, life insurance with the children as beneficiaries, claiming the children as dependants for tax purposes, payments of college expenses; and all other related child visitation and support issues to the Court for adjudication.
(Emphasis added). In addition, evidence was presented at trial without objection as *1055 to what James had paid Gretchen in child support following the separation. This evidence was produced by Gretchen during her case-in-chief and by James on redirect during his case-in-chief. Further, when Gretchen was questioned as to the amount of child support she received from James prior to the hearing, the chancellor had to ask her to speak up. When asking her to repeat an answer, the chancellor specifically said, "So he asked you about temporary support." Still, there was no objection from James.
¶ 15. Clearly, the chancellor had the statutory authority to provide for child support prior to the writing of the order pursuant to section 93-11-65(1)(b) as long as the matter was brought properly before her. Here, the parties expressly brought the matter before her with the agreed order signed by both parties and by the evidence presented during the hearing, which addressed child support payments prior to the issuance of a temporary support order. Therefore, the chancellor did not abuse her discretion when she required James to pay for twelve months of child support prior to the entry of the order granting temporary child support.
II. Whether the chancellor erred in the equitable distribution of the insurance proceeds.
¶ 16. James alleges that the chancellor erred when she failed to account for the $9,696.30 in insurance proceeds Gretchen had placed in a CD in her mother's name. The chancellor's order stated, "As the insurance proceeds are contained in a certificate of deposit in Mrs. Strong's mother's name, and she was not made a party to this action, the Court is unable to order relief against a non-party." In that statement alone, the chancellor was correct as the supreme court has held that a chancellor may not grant relief that affects a third party who is not a party to the suit. Skinner v. Skinner, 509 So.2d 867, 870 (Miss.1987). However, our analysis does not end there.
¶ 17. The chancellor's order followed the proper steps for equitable distribution for each contested piece of property with the one exception of the insurance proceeds. First, she classified the parties' property as separate or marital property. Smith v. Smith, 856 So.2d 717, 719(¶ 8) (Miss.Ct.App.2003). Then she attempted to equitably divide the property in accordance with Ferguson v. Ferguson, 639 So.2d 921, 928-29 (Miss.1994).
¶ 18. However, in her discussion of the classification of the contested pieces of property, the chancellor merely stated that the insurance proceeds would be discussed later in the order. The only other mention of insurance proceeds was when the chancellor determined that they were beyond her reach since they were in a CD in Gretchen's mother's name. Without such a classification, we are unsure as to whether the proceeds should have been equitably divided. The supreme court has held that failure to classify a material asset is grounds for reversal upon appeal. Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997).
¶ 19. The mere fact that the insurance proceeds were placed beyond the reach of the court by Gretchen, did not preclude the chancellor's ability to offset those proceeds from Gretchen's portion of the equitable distribution. Here, the chancellor ordered that the marital property be sold, and the proceeds from the sale were to be split evenly. Therefore, there was marital property that could be used to offset the insurance proceeds in the event the insurance proceeds were determined to be marital property.
¶ 20. Therefore, the chancellor erred when she failed to classify the insurance *1056 proceeds as marital or separate property. Smith, 856 So.2d at 719(¶ 8).

CONCLUSION
¶ 21. The chancellor did not abuse her discretion when she required James to pay back child support for the twelve months preceding the temporary child support order. However, she committed reversible error when she failed to classify the insurance proceeds as either marital or separate property. Upon remand, the chancellor should first classify the insurance proceeds as marital or separate property. After that determination has been made, the chancellor should then reapply the Ferguson factors to all of the marital property.
¶ 22. THE JUDGMENT OF THE HANCOCK COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART TO THE CHANCERY COURT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. THE COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND APPELLEE.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Gretchen had previously signed the insurance proceeds from the wind, hail, and storm damage policy (in the amount of $14,696.30) over to her mother, Patricia Fielder. Fielder, in turn, placed the money in a CD and made one withdrawal of $5,000. This brought the total amount contained in the CD to $9,696.30.