# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00415-COA

**MARTIN NDICU**                                                                 **APPELLANT**

**v.**

**SUSAN GACHERI**                                                                 **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/20/2021 |
| TRIAL JUDGE: | HON. JOSEPH N. STUDDARD |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MATTHEW DANIEL WILSON |
| ATTORNEY FOR APPELLEE: | SUSAN GACHERI (PRO SE) |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 08/22/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.    Martin Ndicu appeals from the October 20, 2021 judgment of the Oktibbeha County Chancery Court, arguing that the chancellor erred by failing to award him child support and educational expenses for the period of time prior to the entry of the judgment. Finding no error in the chancellor's decision, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Martin and Susan Gacheri were married on February 14, 2003, in Nairobi, Kenya. They share two minor children, E.B., a son, born in June 2005, and a daughter, M.B., born in August 2006.[1] Martin filed for divorce in 2006. Then, in 2007, without a court order

---

[1] We use initials to protect the children's privacy.

awarding him custody, Martin took the minor children and moved to Kenya. Martin and Susan were divorced on September 24, 2008, in the Court of Common Pleas of the Fifty-Ninth Judicial District of Pennsylvania. The divorce decree did not address the custody or support of the minor children. During the period following the divorce, Susan was in medical school and doing her medical residency in Pennsylvania. According to Susan, she traveled to Kenya and made several attempts to reach a custody arrangement with Martin through the court system but to no avail. The children also lived with Susan's parents in Kenya at times during this period. Martin moved to Starkville, Mississippi in 2013, and entered a graduate program at Mississippi State University. The children moved to Starkville to live with their father in 2014 and 2015. Susan, a medical doctor, also moved to Starkville during 2016 and early 2017.

¶3.    On November 11, 2016, Susan filed a petition for child custody, temporary relief, and a restraining order in the Oktibbeha County Chancery Court. The petition specifically alleged that there was a significant risk that Martin would take the children to Kenya, a country "which is not a party to the Hague Convention on the Civil Aspects of International Child Abduction and does not provide for the return of an abducted child."

¶4.    On December 8, 2016, the chancery court entered an ex parte temporary child custody order, granting temporary joint legal custody of the children to Martin and Susan, with Martin to have temporary physical custody subject to reasonable visitation for Susan. The chancery court also ordered that Martin was not to remove the children from the jurisdiction without further court order and that Martin was to deposit the children's passports with the

chancery court clerk  as well as any and all of their documents required for travel. Finally, the order set forth a visitation schedule for Susan with the children, but there was no order to pay child support.

¶5.     On February 28, 2017, Martin filed an answer to Susan's petition and filed a counter-petition for child custody and other relief. This included a request for "retroactive" support and educational expenses. After Martin's graduation in 2017, he and the children relocated to Illinois, where he took a teaching position at the University of Northern Illinois. Susan moved to Pennsylvania, where she practiced medicine.

¶6.     The case was set for trial and continued eight times.  The trial dates that were continued were March 6, 2017; June 14, 2017; August 25, 2017; May 10, 2018; November 1, 2019; January 23, 2020; May 21, 2020; September 14, 2020; and October 21, 2020. On March 19, 2020, the chancery court appointed Kristen Williams as a guardian ad litem (GAL). The court was made aware of a pending domestic violence charge against Martin and that E.B. was the alleged victim. In her motion for a continuance of the October 21, 2020 trial date, the GAL advised the chancery court that she was "unable to make a preliminary report to the Court until such time as the criminal matter is resolved, as the pending criminal charge is part of the basis for the Guardian's appointment." On February 19, 2021, Martin was convicted of domestic battery, (misdemeanor), and was sentenced to eighteen months on conditional discharge.[2] He was ordered to complete a "Caring Dads" class.

_____

[2] This charge arose from an incident that occurred on February 13, 2018, in Kane County, Illinois. The charge for which Martin was ultimately convicted was that he "made contact of an insulting or provoking nature with [E.B.], a family or household member of the defendant, in that said defendant struck [E.B.] on or about the head or body."

¶7.     The custody matter finally went to trial on September 13, 2021. The court heard testimony from Susan, Martin, their two children, and the GAL. M.B. testified that she was in the tenth grade and living with her father. She advised the court that she was fine living with her father for the remainder of her tenth-grade year, but she wanted to live with her mother for her junior year. The fact that her brother would be moving out to go to college and the fact that she had never lived with her mother were the main reasons she wanted the change. Her brother, E.B., testified that he was living with his father but had not spoken to him for months. E.B. advised the court that he had no interest in having any sort of relationship with his father. E.B. stated that he was at his father's house only because he really liked his school, was making good grades, and would graduate in about eight months. E.B. said that after graduation, he planned to leave and go to college. He said after graduation that he would not speak to his father or maintain any contact with him. According to E.B., the relationship problem stemmed from a physical altercation with his father.

¶8.     The chancellor delivered his ruling from the bench, which was later reduced to writing in the October 20, 2021 judgment. Beginning the "Findings and Conclusions" part of the judgment, the chancellor noted:

> The Court finds that it has jurisdiction to enter this order. However, now that the parties have moved out of state—and as such, neither the children nor any of the parents reside in Mississippi—the Court strongly suggests that any future modification and/or contempt proceeding be conducted in Pennsylvania (where the Mother lives) or Illinois (where the Father resides).

The chancellor adopted all the findings of the GAL and incorporated her report as Exhibit "A" to the judgment. Martin was granted sole physical and legal custody of the children,

subject to reasonable visitation by Susan.[3] Concerning child support, the judgment notes:

> At trial, Mother testified that she made $195,000.00 a year. Since neither side presented Rule 8.05 financial disclosures, the Court has no other information upon which to make a financial determination. . . . Twenty percent of Mother's monthly adjusted gross income is $2,275.00. Because Mother is going to have to travel to Illinois to enjoy visitation with her children—and to pay for travel when the children fly to Pennsylvania over the summer—the Court hereby deviates from the statutory guideline and orders Mother to pay Father $1,000.00 per month in child support beginning October 1, 2021.

Other than those items set out in the chancellor's judgment, it explicitly denied all other relief, which would include Martin's request for child support during the pendency of the action.

¶9. On October 28, 2021, Martin filed a motion to amend the judgment pursuant to Mississippi Rule of Civil Procedure 59(e), arguing that the judgment should be amended to include "retroactive" support and educational expenses from one year prior to the date of the petition in accordance with Mississippi Code Annotated subsections 93-11-65(1)(b) and (d) (Rev. 2021). In the order denying the motion, the chancellor noted that "the Defendant's Motion neither provides the Court with proof of the kind and/or character required to grant relief from the Judgment nor directs the Court's attention to any such proof/evidence presented at trial." It is from the chancellor's order denying that motion that Martin appeals.

**STANDARD OF REVIEW**

¶10. In *Ponder v. Ponder*, 349 So. 3d 212, 215-16 (¶9) (Miss. Ct. App. 2022), we explained:

> "[A]n award of child support is a matter within the discretion of the chancellor

---

[3] The judgment sets forth a schedule for visitation, which is not an issue on appeal.

and . . . will not be reversed unless the chancellor was manifestly wrong in his finding of fact or manifestly abused his discretion." *Clausel v. Clausel*, 714 So. 2d 265, 266 (¶6) (Miss. 1998). "Furthermore, the process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." *Id.* at 266-67 (¶6) (brackets and quotation marks omitted). However, "[q]uestions of law are reviewed de novo." *McKinney v. Hamp*, 268 So. 3d 470, 475 (¶19) (Miss. 2018).

## ANALYSIS

**Did the chancellor err by failing to award child- and educational-expense support leading up to the date of the judgment?**

¶11. At the outset, we must note that while Martin filed his appellant's brief on November 11, 2022, Susan did not file a responsive brief. We held in *Hatton v. Hatton*, 323 So. 3d 1149, 1153 (¶7) (Miss. Ct. App. 2021):

> In a circumstance such as this, the reasoning in *Jay Foster PLLC v. McNair*, 175 So. 3d 565, 571 (¶15) (Miss. Ct. App. 2015), controls:
>
>> [T]his Court has two options. First, we may take the appellee's failure to file a brief as a confession of error and reverse. This option is favored when the record is complicated or of large volume and the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error. However, if the record can be conveniently examined and such examination reveals a sound and unmistakable basis or ground upon which the judgment may be safely affirmed, we may disregard the appellee's error and affirm.

Having reviewed the record in this matter, we find that Susan's failure to file a responsive brief should not be dispositive of this appeal.[4] Instead, we find that the chancellor's decision

---

[4] This process has been specifically applied to child custody and child support cases. In *Jefferson v. Jefferson*, 327 So. 3d 1085, 1088 n.1 (¶12) (Miss. Ct. App. 2021), we noted that in *Edwards v. Edwards-Barker*, 875 So. 2d 1126, 1128 (¶5) (Miss. Ct. App. 2004), this Court held that "[i]n matters of child custody and support, . . . in the absence of an appellee's

can be safely affirmed based upon this record.

¶12.    In support of his argument, Martin first quotes Mississippi Code Annotated section 93-11-65(1)(b), which provides:

> An order of child support shall specify the sum to be paid weekly or otherwise. In addition to providing for support and education, the order **shall** also provide for the support of the child **prior to the making of the order** for child support, and such other expenses as the court may deem proper.

(Emphasis added). Martin maintains that a basic tenet of statutory construction is that "shall" is mandatory, and "may" is discretionary, citing *Planters Bank & Trust Co. v. Sklar*, 555 So. 2d 1024, 1027 (Miss. 1990) (citing *Murphy v. State*, 253 Miss. 644, 178 So. 2d 692 (1965)). Thus, Martin contends, under a plain reading of this statute, an order of child support must provide for support prior to the date of the order. Martin recognizes that past support is limited by section 93-11-65(1)(d), which provides that "[t]he noncustodial parent's liabilities for past education and necessary support and maintenance and other expenses are *limited* to a period of one (1) year next preceding the commencement of an action." (Emphasis added). He contends that the chancellor erred by failing to award *any* amount for past support of the children. We disagree.

¶13.    In a similar case, *Pettersen v. Pettersen*, 269 So. 3d 466, 470-71 (¶9) (Miss. Ct. App. 2018), this Court held:

> Frederick argues that the chancellor should have ordered Audrey to pay child support for Ryan during the duration of the divorce proceedings. He also claims Audrey should have been ordered to pay child support, including college expenses, for the year preceding the filing of his complaint. Mississippi

brief, our practice is to make a special effort to review the record for support for affirmance." *Id*. (quoting *Barber v. Barber*, 608 So. 2d 1338, 1340 (Miss. 1992)).

Code Annotated section 93-11-65(1)(d) (Rev. 2013) provides: "The noncustodial parent's liabilities for past education and necessary support and maintenance and other expenses are limited to a period of one (1) year next preceding the commencement of an action." (Emphasis added). **This language is not mandatory, however. The chancery court still maintains discretion on whether to award the child support.** Therefore, we find no merit to this claim.

(Emphasis added).

¶14. In support of his position that section 93-11-65(1)(b) mandates that the chancery court provide for child support "prior to the writing of the order," Martin cites *Strong v. Strong*, 981 So. 2d 1052 (Miss. Ct. App. 2008). However, *Strong* recognized that the statute gave the chancellor the authority to make such an award, but *Strong* does not support the position that the statute mandates that a chancellor *always* make such an award. *Id*. at 1054-55 (¶¶13-15). Martin also attempts to distinguish *Pettersen* from the present case by arguing that while Martin had sole physical custody of the children pursuant to the temporary order, the father in *Pettersen* shared physical custody with the mother; further, in *Pettersen*, the father was making monthly payments to the mother, where in the case at bar there was no prior order of support. Martin also contends that if we find that *Pettersen* is applicable, we should revisit our interpretation of the statute and find that the chancery court erred by failing to award any amount for back child support.

¶15. We find that both *Ponder* and *Pettersen* support the fact that the chancellor has discretion in making an award for the future and past support of the minor children. While the court's order requires Susan to pay Martin $1,000 per month for child support going forward, the chancellor noted the absence of evidence to support an award for past child

8

support. Martin filed no financial statement and made no offer of proof concerning his past expenditures in support of the children.

¶16.    The record shows that Martin took custody of the minor children without the benefit of a court order granting him custody or child support. From 2007 until he filed his counter-petition in 2017, Martin never attempted to obtain a court order for custody and support. Further, after the December 8, 2016 temporary order granted him temporary physical custody, he never sought temporary child support during the pendency of this matter.

¶17.    Finally, the almost five-year delay in getting this case to trial can be partly attributed to both Susan and Martin. The record also shows that the delay from September 2019 until the trial in September 2021 was caused by Martin's attorneys withdrawing and by the GAL awaiting the conclusion of the criminal charges pending in Illinois.[5]

## CONCLUSION

¶18.    Based upon the facts of this case, we do not find that the chancellor manifestly abused his discretion by denying Martin's request for past child support.

¶19.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**

---

[5] Thirty-seven days of delay during this period was attributed to Susan's failure to comply with the GAL's requirements.